SKEEL *vs.* SPRAKER and others.

Where C. sold 50 acres of land and took back a bond and mortgage from the purchaser, for $870 of the purchase money, and subsequently purchased from K. a farm in Canajoharie, and gave to him a bond and mortgage for the purchase money, and as a further security therefor assigned to him the mortgage upon the 50 acres, both of which mortgages were assigned by K. to J. in payment of a debt, and C., in 1829, sold and conveyed the Canajoharie farm, with warranty, which farm by several mesne conveyances afterwards came to S , and the mortgage upon the 50 acres remaining unpaid, J. in 1830, filed a bill and obtained a decree to foreclose that mortgage and to sell the premises to satisfy the amount due, and C. subsequently re-purchased the 50 acres, and agreed with the mortgagor to satisfy the decree, but neglected so to do, and afterwards conveyed the premises to a bona fide purchaser who paid him for the same ; *Held*, that the decree upon the mortgage against the 50 acres, was the primary fund for the payment of the debt to J., to the extent of what was due on that decree ; and that S. who had obtained an assignment from him of both securities, had a right to enforce the decree against the 50 acres, for the balance due thereon.

Where a creditor has a lien upon several different parcels of land for the payment of his debt, and some of the lands still belong to the person who in equity ought to pay and discharge the debt, and other parcels have been sold by him, the lands still belonging to such person are in equity first chargeable with the payment of the debt. And upon the principle that as between equal equities, he who is prior in time is strongest in right, if the person who ought to pay the debt has conveyed different parcels of the lands upon which it is a lien at several times to bona fide purchasers, as between such purchasers the lands are chargeable in equity in the inverse order of their alienation.

Where a mortgagee has assigned his mortgage as a security for a debt due by him to a third person, his taking back a conveyance of the mortgaged premises and agreeing to pay the debt to the assignee, does not operate as a merger of the mortgage, either at law or in equity.

The assignment of a security to the owner of one parcel of land upon which it is an equitable lien, for the purpose of enabling the assignee to obtain payment of the debt from another parcel of land which in equity is primarily liable therefore, only operates as a merger of the lien, in equity, as to the lands primarily chargeable with the debt.

March 17.     THIS case came before the chancellor on an appeal by the complainant from a decree of the vice chancellor of the fourth circuit.    From the pleadings and proofs the following facts appeared : In April, 1824, J. Cornue being

the owner of fifty acres of land in Preble, in the county of Cortland, subject to a mortgage thereon to the commissioners of public lands in that town, for about $142, sold and conveyed the premises to E. Van Camp, and took back from him a bond and mortgage on the same premises, to secure the payment of $870 part of the purchase money. In 1825, E. Kane, the then owner of a farm in Canajoharie, sold and conveyed that farm to Cornue ; and to secure the payment of $1200 of the purchase money, Cornue gave to him a bond and mortgage on the same premises ; and as a further security assigned to him Van Camp's bond and mortgage on the lot in Preble. Kane afterwards transferred both of these securities to William James, for the payment of a debt ; by which James was substituted in the place of Kane, and became entitled to all his legal and equitable rights as to both securities, to the extent of the $1200 and interest thereon. While the rights of the then owners of both pieces of land were in that situation, in February, 1829, Cornue sold and conveyed the Canajoharie farm to A. D. Roof, with warranty, and took back a bond and mortgage for part of the purchase money. And in May, 1832, Roof sold and conveyed the same farm to the defendant, Livingston Spraker, with warranty ; who paid off Roof's mortgage out of the consideration money which was to be paid by him on that sale. Spraker afterwards conveyed the Canajoharie farm to B. F. Johnson, with warranty.

Sometime in the year 1830, Van Camp having neglected to pay up his bond and mortgage, James, as the assignee thereof, filed a bill against him to foreclose the same ; to which bill he also made the commissioners of public lands of Preble, who held the prior mortgage on the same premises, parties. And on the first day of November, in the same year, a decree was made for the foreclosure and sale of the 50 acre lot in Preble, with directions to the master in the first place to pay out of the proceeds of such sale to the commissioners of public lands the amount due upon their prior mortgage, with interest and costs ; and then to

pay to James, the complainant, the amount reported due to him as the assignee of Van Camp's mortgage, with interest and costs ; with a decree over against Van Camp personally for the deficiency if any such there should be. A short time after this decree of foreclosure Van Camp, finding himself unable to pay up the amount due upon his bond and mortgage and to satisfy the decree, made an arrangement with Cornue by which the latter took a quit claim deed of the premises, and gave to Van Camp a bond in which Cornue covenanted to pay up and discharge the bond and mortgage so foreclosed by James ; so as to indemnify and save Van Camp harmless from all damages, costs, interest, charges, or other claim, on account thereof. Cornue afterwards made several payments to James account of the bond and mortgage given to Kane, leaving due thereon upon the 21st of January, 1835, the sum of $761,10 ; which was less than the amount reported to be due upon the Van Camp bond and mortgage, and for which the decree was obtained, including the interest on such decree. In April, 1833, Cornue sold and conveyed the 50 acre lot in Preble to the complainant ; falsely representing to him that there was only $150 due on the Van Camp mortgage, which Cornue promised to pay in a very short time ; but giving him no information of the fact that the mortgage had already been foreclosed by James and a decree for sale obtained thereon, of which the complainant was then ignorant. At the time of that sale Skeel, the complainant, paid Cornue $200 of the purchase money and gave him a bond and mortgage for the residue ; and in November thereafter Cornue assigned that bond and mortgage to L. King and S. Viall. Skeel afterwards paid the whole of that mortgage to the assignees, except the amount due to the commissioners of public lands ; and he paid most of it before he was aware of the fraud and deception which Cornue had practiced upon him.

James having died in December, 1833, and his executors still holding the decree, and also the mortgage upon the Canajoharie farm, as securities for the balance still due, and

Cornue having become insolvent, the defendant Livingston Spraker, who had then conveyed the Canajoharie farm to Johnson with warranty, for the purpose of protecting himself from loss in consequence of the mortgage which was a lien on that farm, applied to the executors of James and obtained from them an assignment of the decree against the Preble lot and of the bond and mortgage originally given to Kane on the Canajoharie farm ; upon payment to such executors of the balance then due and secured by both securities. This assignment was taken in the name of the defendant D. Spraker, who was a brother and the mere trustee of L. Spraker ; and he was authorized by the executors to revive the foreclosure suit for the benefit of L. Spraker, to enable him to realize the money wh'ch he paid to obtain such assignment. The decree was revived accordingly, and the master was proceeding to sell the Preble lot thereon when this bill was filed against the two Sprakers to prevent them from carrying that decree into effect ; and Cornue was also made a party defendant in the suit.

The cause was heard before the vice chancellor upon pleadings and proofs and the admissions and documentary evidence of the respective parties. He decided that the complainant had no equitable right to restrain L. & D. Spraker from proceeding to enforce the decree to the extent of the balance which was due to the executors of James at the time of the assignment to Spraker, with interest thereon. He therefore dismissed the bill with costs as to them and directed the decree of foreclosure and sale to be carried into effect accordingly. But leaving the complainant, if he thought proper, to apply for such a decree against Cornue as he might be advised to ask for upon the facts of the case. From this decision the complainant appealed to the chancellor.

The following opinion was delivered by the vice chancellor, upon making the decree appealed from :

WILLARD, V. C. The quit claim deed executed by Van Camp to Cornue on the 25th November, 1830, and the bond of indemnity executed at the same time by Cornue to Van Camp, would probably have operated as a satisfaction of the mortgage of the 17th April, 1824, given by Van Camp to Cornue, on the same premises, if Cornue had not previously assigned it to Kane as collateral security for the payment of a mortgage given by him to Kane on the 8th June, 1825. The doctrine of merger was well considered by the court of errors, in *James* v. *Morey*, (2 *Cowen*, 246, 6 *John. Ch. Rep.* 411, *S. C.*) The rule at law is inflexible, that where a greater estate and a less meet and coincide in the same person, in one and the same right, without any intermediate estate, the lesser estate is immediately annihilated ; or in the law phrase, is said to be merged in the greater. In analogy to this rule, courts of equity hold that when the equitable and legal estates unite in the same person, the equitable is merged in the legal estate. But in equity this rule is not inflexible. It is said to depend on the express or implied intention of the person in whom the estates unite, whether the equitable estate shall merge, or shall still be kept in existence ; and the court will imply an intention to keep the estates separate, or to unite them, as the case may be, according as the general convenience and substantial justice between the parties interested may require. In this case, the rule does not apply, because the legal and equitable estates never for a moment united in the same person. There could, therefore, be no merger. The mortgage was not paid by this quit claim of Van Camp to Cornue. So the parties themselves considered it ; and it was for this reason that the bond was given by Cornue to Van Camp to indemnify him against the mortgage. As the assignment by Cornue of the Van Camp bond and mortgage to Elias Kane, on the 8th June, 1825, as before stated, was merely a collateral security for the payment of the bond and mortgage given by Cornue to Kane on his purchase of the Canajoharie farm, the payment of the latter mortgage would operate to restore the Van Camp bond

and mortgage to Cornue. But in order to produce that result, there must be a technical payment of the Kane bond and mortgage, in contradistinction from a purchase and assignment thereof. Thus, if Cornue had sold the Canajoharie farm subject to his mortgage to Kane, and the purchaser had paid it off, such payment would have enured to the benefit of Cornue, and would have re-invested him with the Van Camp bond and mortgage, which would thus have been ipso facto discharged.

But such was not the mode in which the business was transacted. On the 28th of February, 1829, Cornue sold the Canajoharie farm to Roof for $1600, with covenants of warranty. On the 14th May, 1832, Roof sold to Livingston Spraker the same farm, with warranty; and on the 27th April, 1833, Spraker sold to Johnson, with warranty also. Now it is obvious that Cornue is the man who is ultimately liable to pay off the Kane mortgage, and Cornue is the one who is ultitimely liable to pay the Van Camp bond and mortgage; or, which is the same thing, to indemnify against it. He having sold the fifty acres with warranty to the complainant, on the 1st April, 1833, is bound to warrant and defend against that mortgage. The parties standing in this relation to each other, and Cornue being insolvent, it is evident that somebody must be the sufferer. The object of this suit is to determine on whom the loss should fall.

William James having, in September, 1826, become the assignee of both the Van Camp mortgage given to Cornue, and the mortgage given by Cornue to Kane for the same debt, (the Van Camp mortgage being collateral to the Kane mortgage) had a right to collect his debt on either mortgage. If, then, the complainant, perceiving this dilemma, had paid James the amount of his demand and taken an assignment of both the mortgages, could he not have enforced payment of the Kane mortgage out of the Canajoharie farm? That mortgage being the oldest incumbrance on the farm and not having been paid, could beyond controversy be collected out of that farm; and the occupant must look back to his immediate grantor for indemnity,

and the latter to his grantor, and so on until, as before stated, Cornue being the first warrantor after the mortgage, must make up the loss. This court could not have prevented the complainant from pursuing that course, because there is no stronger reason why the complainant should lose by Cornue than the owner of the Canajoharie farm, and the court would leave the loss to remain where it fell.

Instead, however, of adopting this course, the complainant remained silent, and Spraker made the purchase from the estate of James of the two securities. Is there any reason why he should not avail himself of the fruit of his vigilance ? It is said by the complainant that he paid off the Kane mortgage, and thereby re-invested Cornue with the Van Camp mortgage, which has thus become extinct. But this allegation is not supported by the facts. If Spraker had purchased the Canajoharie farm subject to the mortgage given by Cornue to Kane, or if he was in any way bound to pay that mortgage as a part of the consideration of his purchase, as is alleged in the bill, the complainant's view of the case would be correct. But the answer denies the fact ; and being responsive to the bill, is evidence for the defendants. The negotiation between Spraker and the representatives of James, cannot be called in strict legal language a payment. It was in fact a purchase of the two securities, with a view to use them in his own protection, and thus to require the complainant to look to Cornue for indemnity, rather than to be compelled to seek indemnity from that quarter himself. There is nothing improper or unfair in this transaction. Spraker and the complainant may be assumed to be equally innocent, and a loss is to be borne by one of them in consequence of the insolvency or fraud of Cornue. The rule is, that the loss is to be left with him on whom it has fallen ; and the equities being otherwise equal, the priority of time must determine the right—" *qui prior est tempore, potior est jure.*" See opinions of Chancellor Kent, in *Berry* v. *Mutual Ins. Co.* (2 *John. Ch. R.* 603,) and of Chief Justice Savage, in *James* v. *Morey*, (2 *Cowen*, 316.) Spraker has first obtained the

1840.

Skeel
v.
Spraker.

securities from the estate of James, and cannot be deprived of them. Each man in a storm has a right to seize a vacant plank, *tabula in naufragio*—but he has no right to displace his companion whose superior dexterity or strength has enabled him to gain the prior possession. If it can save but one from drowning, he alone is entitled to it who has first sought its protection.

I have hitherto considered the case as if the equities were entirely equal. But it is by no means clear that such is the case. This branch of the subject may be reviewed in several aspects. It is said by the defendant, and I think truly, that Spraker has not only the *prior* but likewise the *better* equity. He purchased in May, 1832. The complainant did not purchase till April, 1832. Spraker's right therefore to acquire the mortgage which Cornue gave to Kane on the Canajoharie farm, existed before the complainant had any interest in the matter. He also, as has been before stated, obtained an assignment of the mortgages and decree from the executors of James. He is thus lawfully in possession of the very subject of controversy.

The complainant purchased the fifty acre lot of Cornue in 1833, *pendente lite.* James filed his bill to foreclose the Van Camp mortgage on the said fifty acres in 1830 ; and Cornue took a re-conveyance from Van Camp in the same year, though subsequent to the commencement of the suit. The doctrine with regard to purchasers *pendente lite* has been fully considered by the courts in this state, and will be found amply explained and illustrated in *Murray* v. *Ballou,* (1 *John. Ch. Rep.* 566,) and several subsequent cases, (2 *id.* 444, 7 *Wendell,* 152, 8 *John. R.* 484, 7 *Wendell,* 157, 11 *id.* 442.) The established rule is, that a *lis pendens* duly prosecuted and not collusive, is notice to a purchaser so as to affect and bind his interest by the decree ; and the *lis pendens* begins from the service of the subpœna, after the bill is filed. The litigating parties are exempted from taking notice of a title so acquired ; for as to them, it is as if it had never existed. The rule may sometimes operate with hardship, but the general convenience requires it. (11 *Ves.* 194.)

So far as the equities between these parties are concerned, the complainant must be said to have purchased the fifty acres with a full knowledge that James had filed a bill to foreclose the Van Camp mortgage. He knew that the premises were chargeable with that mortgage; and that if it was not paid, he himself would be liable to be turned out of possession on the production of the master's deed under the decree. He must be presumed to have made provision for all these contingencies in his purchase; and if he omitted to do so, he must be chargeable with negligence. He is bound by the decree of foreclosure, and is not permitted to call it in question as against James, the complainant therein, or any one claiming under him. The decree for the balance is entitled to be enforced against the premises in question.

It has been made a point on the part of the defendants, that the equity of the complainant's bill, and on which the injunction was probably awarded, has been denied by the answer. Thus, that the material allegations in the bill, that Cornue furnished part of the money paid by Spraker to the executors of James on obtaining the assignment of the decree; that the assignment was made at the request of Cornue; and that Spraker purchased of Roof subject to the Roof mortgage and agreed to pay James the balance of the Cornue mortgage to Kane, are all denied in the answer; and that these allegations are not supported by proof. The case then stands before me solely on the effect of the transactions between the parties already adverted to, upon their respective rights and equities. On the whole, therefore I am of opinion that the bill cannot be supported as against the Sprakers, and must, as to them, be dismissed. That will of course dispose of the injunction, as I presume it was on its face a mere temporary injunction. With regard to Cornue, the bill might, perhaps, be retained if there was any object to be gained by it. The propriety of this course was not made a subject of argument, and I will therefore leave the cause, as to him, for such ulterior steps as may be deemed fit and proper.

*E. W. Leavenworth & D. B. Noxon,* for the appellant. The quit claim deed executed by Van Camp and wife to Cornue, and the bond of indemnity executed at the same time by Cornue to Van Camp, operated as a satisfaction of the mortgage in question as between Van Camp and Cornue. Cornue having assigned to Kane Van Camp's bond and mortgage merely as collateral security to his, Cornue's, bond and mortgage to Kane, the moment Cornue's bond and mortgage to Kane were paid, the Van Camp bond and mortgage remained no longer collateral security to Kane, but the same became the property of Cornue, and became satisfied. Kane could only assign to James the interest he had in the Van Camp bond and mortgage, which was extinguished when Spraker paid to James' executors the amount due on the mortgage from Cornue to Kane. Daniel Spraker therefore, as the trustee of Livingston Spraker, acquired no interest by virtue of the assignment from the executors to him, their interest having been extinguished. The assignment from the executors of James to Daniel Spraker, was in fraud of the complainants' rights. The original decree was satisfied by the payment of the mortgage from Cornue to Kane, as the decree did not change the nature of the security, but the same still remained collateral. The decree of revivor, was a mere substitute of other parties, and is subject to the same equities as the original decree, and was merely collateral. The Van Camp bond and mortgage being assigned as collateral security to the bond and mortgage from Cornue to Kane, the latter should have been first resorted to ; and there is no pretence that it was not ample. (1 *Story's Com. on Eq.* 472, *note, and* 477, 478, 479.)

*H. Loucks & D. Cady,* for L. and D. Spraker. The appellant's (complainant below) equity being wholly denied by the responsive answer of the defendants, the injunction must be dissolved. The Van Camp mortgage and the decree of foreclosure on it of November 1, 1830, being matters of record, were notice to the complainant when he pur-

1840.

Skeel
v.
Spraker.

chased of Cornue. The complainant had likewise actual notice, as he admits in his bill of complaint, that a balance was due on the Van Camp mortgage when he purchased. As Cornue has had no interest in the Van Camp mortgage or decree of foreclosure upon it, nor any control over either since the assignment of the mortgage by him to Kane in 1826 ; no act which he, Cornue, has since done can affect or impair the rights of the assignee. The defendant L. Spraker, the beneficial assignee, has a right to enforce the decree on the Van Camp mortgage for the balance due on the Cornue mortgage, (to secure the payment of which the Van Camp mortgage was assigned by Cornue,) as he, Spraker, is warrantor of the title of the Canajoharie farm, and both Cornue and Roof are insolvent. The doctrine of merger does not apply to this case, as the legal and equitable estates have not been united in the same person, and as it was Spraker's interest to keep them disunited ; from which equity implies an intention to do so. (2 Cowen's Rep. 246. James v. Morey, in error on appeal, 6 John. Ch. Rep. 420.) The defendant L. Spraker has not only the prior equity, but also the better equity. (2 Cowen's Rep. 311.) He purchased in 1832, and the complainant in 1833 ; and he obtained an assignment of the Cornue mortgage, and of the Van Camp mortgage and of the decree upon it, for his own benefit. The complainant purchased from Cornue the fifty acre lot *pendente lite* during the pendency of the proceedings for the foreclosure of the Van Camp mortgage, and Cornue purchased also from Van Camp *pendente lite*. The complainant, deriving his title under Van Camp, the mortgagor, subsequent to the mortgage and decree of foreclosure, is not permitted to call in question the rights of the assignee of the mortgage and decree to enforce such decree for the balance due on the Cornue mortgage, to secure the payment of which the assignment was originally made by Cornue.

It is a general principle, that all persons who come in as purchasers *pendente lite*, though they are not parties to the suit, they and their interests shall be bound and avoid-

ed by the decree. (*Per Kent, Ch. in Murray* v. *Ballou,* 1 *John. Ch. Rep.* 579.) It is a general rule, also, that an alienation pending a suit is void. (*Per Ld. Camden, in Ambler,* 676, *cited also in* 1 *John. Ch. Rep.* 580, *per Kent, Ch.*) And a purchase of the subject matter in controversy *pendente lite,* does not vary the rights of the parties in the suit. (*Per Kent, Ch. in Murray* v. *Lilburn,* 2 *John. Ch. Rep.* 444. *Jackson* v. *Andrews,* 7 *Wend.* 152. 8 *John. R.* 484. 7 *Wendell,* 157. *Parks* v. *Jackson,* 11 *id.* 442.) The assignment by Cornue to Kane of the Van Camp mortgage is absolute on its face, and Cornue, the assignor, was therefore not a necessary party to the foreclosure suit. (*Ward* v. *Van Bokelin,* 2 *Paige's Ch. Rep.* 295.) It is, however, conceded that the assignment was as collateral security to secure the payment of the Cornue mortgage; and so far it is absolute to all intents, and so far only the defendant L. Spraker claims it. Where a creditor has a lien upon two funds for the payment of his debt, chancery will not compel him first to exhaust the fund which the junior creditor cannot reach, if the senior creditor will thereby be injured. (*Woolcocks* v. *Hart,* 1 *Paige's Ch. Rep.* 185. 5 *John. Ch. Rep.* 320, 328.) Nor will chancery, except under very peculiar circumstances, compel a creditor to look first to the principal debtor and exhaust his remedy against him, before he may resort to the surety. (*Hays* v. *Ward,* 4 *John. Ch. Rep.* 123, 131.)

THE CHANCELLOR. It is perfectly clear that there was no merger of the Van Camp bond and mortgage, either in law or equity, by the re-conveyance to Cornue after the decree of foreclosure of that mortgage in favor of James, the assignee. As the interest in the bond and mortgage was in James, and the title to the land in Cornue, subject to the payment of the mortgage debt to James, it is impossible to consider the interest in both as being united in the same person, so as to produce a merger. James, however, held the decree against the farm which then belonged again to Cornue, and the mortgage on the Canajoharie

farm which then belonged to Roof, as security for the same debt. How then stood the equities at that time, as between Cornue and Roof, as to the enforcing the one or the other of those securities by James for the recovery of his debt? Clearly as matters then stood Roof, who had received a warranty deed from Cornue, had an equitable right to insist that Cornue's own property should be first charged, for the protection of Roof's title according to the warranty. Both mortgages were given to Kane at the same time as different parts of the security for the payment of the same debt, to wit, the purchase money of the farm which was sold and conveyed at that time. They were therefore in the hands of Kane in the nature of one mortgage or security upon both pieces of land. Even if Cornue had continued to be the owner of the Canajoharie farm and Van Camp of the Preble lot, as they were previous to the sale of the farm to Roof in 1829, certainly Van Camp could not have complained that James compelled him by a foreclosure of his bond and mortgage, which was all justly due, to pay the debt for which Cornue's Canajoharie farm was also holden by virtue of the other mortgage. And after the Canajoharie farm had been sold to Roof with warranty, as it was when the foreclosure suit was commenced, Roof certainly would have had good reason to complain if James had proceeded to enforce the payment of his debt against that farm, and to drive him back to his remedy on his covenants of warranty contained in his deed. Under those circumstances, if James had refused to proceed upon the Van Camp mortgage, and had refused to assign the same to Roof upon receiving the balance of his debt, so that the latter could have proceeded thereon for his indemnity and to recover back the money, a court of equity might properly have interfered to prevent James from foreclosing the other mortgage; especially if Cornue had been insolvent, as he now is, so that Roof could have had no remedy against him on his covenants of warranty. Neither were the equities between these two securities in any way changed by the subsequent re-conveyance of the Preble lot to Cornue, and his bond of indemnity to Van Camp. If the question was

as to Van Camp's personal liability upon his bond, the equities between him and Roof would indeed be equal except in point of time. But even in that case, the maxim, that as between equal equities, he who is first in time is strongest in right, would have turned the scale in favor of Roof; whose equity, arising out of the covenant of warranty, arose more than a year before Van Camp's, under his bond of indemnity.

The question, however, is not as between Van Camp's personal liability and Roof's farm; but it is between the subsequent grantee of that farm and the subsequent grantee of Cornue, the owner of the Preble lot under Van Camp's quit-claim deed. And if, as against Cornue as such owner of the Preble lot, Roof or his assignee had an equitable claim to have the debt due from Cornue, and which was then secured to James by the decree against that lot as well as by the mortgage upon the Canajoharie farm, satisfied out of the property of the real debtor instead of the property of his grantee, Cornue's subsequent conveyance to the complainant could not deprive the grantee of Roof of his prior equity arising from the previous deed.

Viewing the case in this light, it comes distinctly within the principle which is constantly acted on by this court, and other courts of equity, that where there is a lien upon different parcels of land for the payment of the same debt, and some of those lands still belong to the person who in equity and justice ought to pay such debt, and others have been transferred by him to other persons, his lands shall be first charged; and if he has sold the several parcels at different times, they are to be charged in the inverse order of their alienation. (*Gill* v. *Lyon*, 1 *John. Ch. Rep.* 447. *Clowes* v. *Dickinson*, 5 *Idem*, 235. *Stoney* v. *Shultz*, 1 *Hill's Ch. Rep.* 500. *Gouverneur* v. *Lynch*, 2 *Paige's R.* 300. *Guion* v. *Knapp*, 6 *Idem*, 35.) Here the Canajoharie farm had been conveyed with warranty to Roof, and he had again conveyed to L. Spraker nearly a year before the complainant took his conveyance of the Preble lot from Cornue, which lot was then, in equity, the primary fund for the payment of Cornue's debt to James.

The complainant was not ignorant of the existence of the mortgage on the Preble lot, and that it was then in the hands of an assignee; as he says Cornue promised to pay off the small balance of $150, which he pretended was all that was then due. This was sufficient to put him on inquiry as to the situation of that mortgage and the equitable rights of other persons as connected with it. And if, instead of relying upon the false and fraudulent representations of the person from whom he was purchasing, he had applied either to Van Camp, the mortgagor, or to James, he would have been informed of the foreclosure suit. But even without any such constructive notice, as Spraker had the prior equity, and has now also the better legal right by the assignment of the decree from the representatives of James, it would be contrary to the settled principles of this court to attempt to deprive him of that right.

The taking of an assignment of the mortgage upon the Canajoharie farm, simultaneously with the assignment of the decree against the Preble lot, for the avowed object of obtaining indemnity by means of that decree for the money then paid to the executors of James, cannot be considered as a payment of either the mortgage or the decree; especially as the assignment was made to a third person as a trustee. And according to the decision of this court in the recent case of *Millspaugh* v. *McBride*, (7 *Paige's Rep.* 509,) it would not have operated as a merger or extinguishment so as to deprive the assignee of the equity which it was intended to secure to him, even if the assignment had been made directly to L. Spraker himself; or if Johnson who was then the owner of the Canajoharie farm had purchased the mortgages and decree and taken an assignment of them in his own name.

For these reasons the decree of the vice chancellor was right, and according to the settled principles of equity. It must therefore be affirmed with costs to the defendants D. Spraker and L. Spraker; but without prejudice to the right of the complainant to apply for such a decree against the defendant Cornue as he may think himself entitled to; as authorized by the opinion of the vice chancellor.