ALBERT C. STEERE, RESPONDENT, v. CHARLES CHILDS, APPELLANT, IMPLEADED WITH ELIZABETH LAWSON, RESPONDENT AND OTHERS.

*Foreclosure sale — when sale, not made in inverse order of alienation.*

December 4, 1848, A. executed a mortgage on certain real estate, which was foreclosed in this action. March 26, 1859, A. conveyed a portion of the property to one Steere, and on December 1, 1865, conveyed the whole thereof to him, subject to the said mortgage, payment of which was assumed by him. On December 1, 1865, Steere executed a mortgage to Lawson and another upon all the premises described in the mortgage of December 4, 1848, except that portion described in the first deed to A. of March 26, 1859. June 5, 1868, Steere executed another mortgage to Averill upon all the lands described in the first mentioned mortgage of December 4, 1848. August 27, 1874, Steere executed a mortgage to one Childs upon the land conveyed to him by the deed of March 26, 1859.

Upon the foreclosure of the first mortgage, given December 4, 1848, *held,* that the land conveyed to Steere March 26, 1859, and subsequently mortgaged to Childs, should be first sold.

APPEAL from a judgment of foreclosure and sale, entered in this action. The principal question was as to the order in which different portions of the premises, included in the plaintiff's mortgage, should be sold.

*L. J. Burditt* and *N. C. Moak,* for the appellant. On conveyance of the house lot, covered by the Childs' mortgage to Rufus

Steere, the remainder of the real estate covered by the prior mortgage was liable to be first sold. This was a fixed right, affecting not only the corporation but the holder of the mortgage. (*Crafts* v. *Aspinwall*, 2 N. Y., 289; *Welch* v. *Tittswoth*, 22 How. Pr., 475; *Woods* v. *Spalding*, 45 Barb., 602; *Stuyvesant* v. *Hall*, 2 Barb. Chy., 151; *Gill* v. *Lyon*, 1 Johns. Chy., 447; *Clowes* v. *Dickinson*, 5 id., 235; *Trustees* v. *Wheeler*, 61 N. Y., 88.) When the corporation deeded the remainder of the land to Rufus Steere, subject to the mortgage, and he assumed to pay it, that land became the primary fund for the payment of the debt; and as to the other land, the house lot, that was a mere security for the balance, if any. (*Woods* v. *Spalding*, 45 Barb., 607; *Stuyvesant* v. *Hall*, 2 Barb. Chy., 151; *Warfield* v. *Crane*, 4 Abb. Ct. App. Dec., 525; 2 Jones on Mort., § 1625; *Chapman* v. *Beardsley*, 31 Conn., 1; *Atwood* v. *Vincent*, 17 id., 574; *Kilbourn* v. *Robbins*, 8 Allen, 466, 471; *Welch* v. *Beers*, id., 151; *Engle* v. *Haines*, 1 Hals. Chy., 187 id., 632; *Caruthers* v. *Hall*, 10 Mich., 40; *Ferris* v. *Crawford*, 2 Denio, 595; 2 White & Tudor's Lead. Cas. in Eq. [4th Am. ed.], 303.) The mortgagee, in the first mortgage given by Steere, was chargeable with knowledge and notice of such arrangement affecting the title of Rufus Steere, his mortgagor. (*Mason* v. *Payne*, Walker's [Mich.] Dig. 459; *Jumel* v. *Jumel*, 7 Paige, 591; *Harris* v. *Ely*, id., 421; *Brown* v. *Simmons*, 44 N. H., 480.) Steere's possession was constructive notice of such equitable rights. (*Governeur* v. *Lynch*, 2 Paige, 300; *Trustees, etc.*, v. *Wheller*, 61 N. Y., 88.) When the second mortgagees took their mortgage upon the remainder conveyed to Steere, they knew, and were bound to know, that they took the security of a mortgage upon the land covered by their mortgage, subject to all the conditions upon which their mortgagor took title and on which his title depended. (*Coutant* v. *Servoss*, 3 Barb., 141, 142; *Engle* v. *Haines*, 5 N. J. Eq. [1 Halstead], 186; affirmed 5 id., 632; *McDonald* v. *Whitney*, 2 Weekly Dig., 529; *Caruthers* v. *Hall*, 10 Mich., 40; *Mason* v. *Payne*, Walker's [Mich.] Chy., 461.) The agreement and equity bound the mortgagees of the second mortgage, and prevented the mere equity to ask a sale in the inverse order of alienations from attaching. (*Wilkoff* v. *Davis*, 4 N. J. Eq., 224, 227; *Hill* v. *McCarter*, 27 id., 41; *Welch* v.

*Beers*, 8 Allen [Mass.], 151; Coote on Mort., 488, m. p., 562, 2 Am. ed.; *Green* v. *Romage*, 18 Ohio, 428; Bispham Princ. of Eq., § 333, pp. 310, 311.)

*I. Lawson*, for the respondent. Steere had taken a quit-claim deed of both portions, and both remained subject to the whole of the plaintiff's mortgage, and liable to be sold thereon. He had assumed the payment of the whole of the mortgage debt, and had become personally liable to pay any deficiency which might arise after the sale of both portions of the mortgaged premises. (*Heart-ley's Executor*, etc., v. *Harrison*, 24 N. Y., 171, and cases cited; *Burr* v. *Beers*, 24 N. Y., 178; *Ricard* v. *Sanderson*, 41 N. Y., 179; Willard's Equity [1st ed.], p 454; *Ingalls et al.* v. *Morgan's Executrix*, etc., 10 N. Y., 178, at p. 186; see, also, *Bisley et al.* v. *Lawrence et al.*, 11 Paige, 581; *Oppenheimer* v. *Walker*, 3 Hun, 30; *Clowes* v. *Dickinson*, 9 Cowen, 402; *Welch et al.* v. *James et al.*, 22 How. Pr., 474; *New York Life Ins. Co.* v. *Vanderbilt*, 12 Abb., 458.) Defendant Lawson's equity could not have been affected or impaired by the subsequent mortgages to the defendants Childs or Carter, as they took with notice of the prior equities, all the previous conveyances and mortgages having been recorded at the time they took their incumbrances, and they taking through Rufus Steere, and subject to all the equities existing against him. (Willard's Equity, 45 and 46; *Berry* v. *Mutual Ins. Co.*, 2 Johns. Ch. R., 608; *Wilkes et al.* v. *Harper et al.*, 2 Barb. Ch. R., 338; *Clowes* v. *Dickinson*, 5 Johns. Ch. R., 241.)

TAPPAN, J.:

This is an appeal by the defendant Charles Childs from a portion of a judgment in an action for the foreclosure of a mortgage. Three of the defendants answered, viz : The defendant and appellant Childs, the defendant Lawson, and the defendant Carter, executrix, etc. The cause was tried by the court at the Otsego Special Term March 29, 1877, when judgment for plaintiff was ordered, with special directions for the application of certain rents and profits of the mortgaged premises with the usual provisions for a foreclosure and sale of the mortgaged premises in parcels, and for the application of the proceeds. The mortgage sought to

be foreclosed herein was executed by a corporation known as the Union Cotton Manufactory, on the 4th day of December, 1848, to secure $5,000, in three equal annual installments, with interest annually on the amount thereof unpaid. At the time of the trial, there remained unpaid upon the mortgage $5,396.93. It appeared that this mortgage was the first lien upon the premises ; also, that the premises covered by the mortgage would bring more upon a sale thereof than sufficient to satisfy the amount unpaid thereon. By the pleadings, proofs and findings it appeared that on the 26th day of March, 1859, the trustees of said corporation executed to the defendant Rufus Steere a conveyance of about seven-eighths of an acre of land, together with a piece known as the Island, particularly described in the answer of the defendant Elizabeth L. Lawson, known as the house and lot, parcel of the land covered by the mortgage first mentioned, whereby they quit-claimed the lands last mentioned. Such conveyance was duly recorded June 29, 1863. Upon this piece of land the defendant, Rufus Steere, erected a dwelling-house in which he resided at the time of the trial; besides such land, the mortgage premises consisted of a lot used as a hop-yard; also of a cotton-factory, with store building and dwelling-houses for factory operatives, with water power, rights, appurtenances, privileges and easements connected with such factory; also of another parcel used as a farm, with a farm barn thereon.

On the first day of December, 1865, the trustees of the said corporation, by deed of conveyance by them duly made, quit-claimed and released to the defendant Rufus Steere, all the lands and premises covered by the said first-mentioned mortgage sought to be foreclosed; said conveyance was also executed by the said Rufus Steere, under his hand and seal, and the same was made subject to the payment of the last mentioned mortgage, and in such conveyance the said Rufus Steere covenanted and agreed to pay such mortgage, and the moneys secured thereby as parts of the purchase-money of the lands and premises thereby conveyed, and such conveyance was duly recorded on the 24th day of January, 1866. On the first day of December, 1865, the defendant, Rufus Steere, for a valuable consideration, executed and delivered to the plaintiff, Albert C. Steere, and the defendant, Elizabeth L.

Lawson, his bond, conditioned for the payment of $6,000, with interest, to be paid on the sixth day of April, 1866, and said principal sum in six annual installments of $1,000 each, and interest on all sums remaining unpaid, semi-annually; and as collateral to such bond, and to secure the payment thereof, said Rufus Steere and his wife executed to the said plaintiff, and the said Elizabeth L. Lawson, a mortgage containing the same conditions as said bond, which granted and conveyed to said last-named mortgagees, their heirs and assigns, all of the lands, premises and property covered by the mortgage herein first above mentioned and sought to be foreclosed herein, excepting so much of said lands, premises and property as had theretofore been sold and conveyed by the said Union Cotton Manufactory, or by the trustees thereof, the deeds of conveyances whereof had been recorded in the office of the clerk of the county of Otsego, prior to the first day of September, 1865, which exception included the said lands, premises and property described in said deed from said trustees to the defendant, Rufus Steere, dated March 26th, 1859, which had been recorded in said clerk's office, on the 29th day of June, 1863, as before mentioned. That said last-mentioned mortgage was duly recorded on the 24th day of January, 1866, and there remained due and unpaid upon the same, at the time of the trial, $8,097.70. Before the commencement of the action, the plaintiff, Albert C. Steere, had sold and assigned all his interest in said last-mentioned bond and mortgage to the defendant, Elizabeth L. Lawson, who, at the time of the trial was the owner and holder thereof. It further appeared that the defendant, Rufus Steere, was insolvent, and that said last-mentioned mortgage and the property covered and conveyed thereby was the only security that said defendant, Elizabeth Lawson, had for the indebtedness referred to in, and secured by the last-mentioned mortgage. It also appeared that since the 17th day of July, 1876, the plaintiff, Albert C. Steere, and the defendant, Elizabeth L. Lawson, had been in possession of a portion of the lands covered by said last-mentioned mortgage, and the plaintiff's mortgage sought to be foreclosed, and had received the rents and profits thereof as mortgagees in possession, under the two mortgages lastly herein referred to, to the amount of $350. It also further appeared, that on the 5th

of June, 1868, the said defendant, Rufus Steere, for a valuable consideration, duly made to Wm. II. Averill, testator of the defendant Jane R. Carter, executrix, etc., his bond, dated that day, conditioned for the payment of $14,500 and interest; that as collateral to said bond, and to secure the payment of the moneys thereby conditioned to be paid, the said Rufus Steere and his wife duly made to said Averill a mortgage, containing the same conditions as said bond, which mortgage covered all the lands covered by the plaintiff's mortgage sought to be foreclosed, and was duly recorded on the 17th day of June, 1868; upon which mortgage there remained due and unpaid, at the time of the trial, $21,805.08. It also appeared that on the 27th of August, 1874, the said Rufus Steere and his wife duly made to the defendant, Charles Childs, a mortgage whereby they in terms granted and conveyed to him all the lands and premises described in the said deed from the said trustees to the said Rufus Steere, dated March 26, 1859, recorded as before mentioned, June 29th, 1863, particularly described in the answer of the defendant, Charles Childs, as security for the payment of $4,000, being the amount of certain accommodation indorsements made by said Childs for the benefit and accommodation of the said Rufus Steere; that at the time of the trial there was due, secured by and unpaid upon said mortgage, $4,167; that such mortgage was duly recorded on the 29th day of August, 1874. It further appeared that the premises, covered by the mortgage sought to be foreclosed, could be sold in four separate parcels, and that it was for the interest of all the parties that the whole should be sold in such parcels; that the portion of such lands and premises consisting of the dwelling-house occupied by said Rufus Steere, and about seven-eighths of an acre of land adjoining the same, described in said deed from said trustees to said Rufus Steere, dated March 26th, 1859, should be sold as one parcel; that the piece known and used as the hop lot should be sold as one parcel; that the store building, the factory, the water power, rights, appurtenances, privileges and easements connected therewith, together with the dwellings for factory operatives, with so much of the land surrounding the same and connected therewith as the referee appointed to sell should determine to be necessary for the beneficial enjoyment thereof, should be sold as

one piece; and that the remainder of said lands and premises, including the farm barn, should be sold as one parcel.

The court decided and decreed that the mortgage of the plaintiff sought to be foreclosed was a lien upon the lands and premises therein described, prior and superior to the liens and interests of any and all the defendants therein; that one-half of the rents and profits received by the plaintiff and the defendant, Elizabeth Lawson, should be applied upon, and deducted from, the amount found due upon each of their said mortgages respectively; that the plaintiff have judgment of foreclosure and sale; that the said lands described in the said deed from said trustees to said Rufus Steere, dated March 26, 1859, be first sold and the proceeds thereof applied to the payment of the amount found due upon the plaintiff's mortgage, after deducting one-half of such rents and profits; that thereafter the remainder of the premises, described in the mortgage sought to be foreclosed, should be sold in three parcels, as before stated, and out of the proceeds thereof the costs and expenses of sale, and of necessary surveys, should be paid, and with the remainder, the referee appointed to make the sale was directed to pay the costs of the plaintiff and of the defendant Elizabeth L. Lawson, and Jane R. A. Carter, executrix, etc., to be taxed, or so much thereof as the same would pay, and out of the remainder of the proceeds said referee was directed to pay so much of the amount found due upon the plaintiff's mortgage sought to be foreclosed as should remain unsatisfied, after paying and applying thereon one-half of said rents and profits, and the proceeds of the lands and premises directed to be first sold, as before mentioned, or so much thereof as such remainder of such proceeds would pay.

The defendant Childs appealed from all that part of such judgment that directed the lands and premises conveyed to Rufus Steere by said trustees by said deed, dated March 26, 1859, to be first sold, and which directed the payment of costs to the defendant Elizabeth L. Lawson, and that no costs should be paid to the defendant Charles Childs. There does not seem to be any contention between the parties upon the point that after the conveyance of the house lot to the defendant Rufus Steere, by the deed dated the 26th day of March, 1859, and thenceforward until he

received the deed of the remainder of the premises covered by the plaintiff's mortgage, given December 1, 1865, he was entitled in equity, upon foreclosure of plaintiff's mortgage, to have had the premises, which, up to that time, remained the property of the mortgagee, the Union Cotton Manufactory, first sold to satisfy such mortgage, and that no part of such parcel, so first conveyed to him, could have been sold under that mortgage until the parcel of the mortgaged property, belonging to the mortgagors, had been subjected to the payment of the mortgage.

There can be no doubt of the correctness of this proposition. (*Crafts* v. *Aspinwall*, 2 N. Y., 289; Williard's Eq. [Potter's ed.], 154; *Skeel* v. *Spraker and others*, 8 Paige, 182; *Gill* v. *Lyon*, 1 Johns. Ch., 447; *Clowes* v. *Dickenson*, 5 id., 235; *Gouverneur* v. *Lynch*, 2 Paige, 300; *Guion* v. *Knapp*, 6 id., 35; *Rathbone* v. *Clark*, 9 id., 648; *Schryver* v. *Teller*, id., 173.)

After the execution of the deed of December 1, 1865, by the Union Cotton Manufactory to Rufus Steere, by which the premises therein described, the remainder of the lands covered by the plaintiff's mortgage, were granted to him subject to the payment of the bond and mortgage to the plaintiff, and wherein he assumed and covenanted to pay the same as a part of the purchase-money of the lands and premises conveyed, he became personally liable for the payment of the debt, and the plaintiff could have maintained an action against him upon such covenant without resorting to a foreclosure of the mortgage, and without joining the mortgagor as defendant. (*Burr, administratrix*, v. *Beers*, 24 N. Y., 178; *Hartley* v. *Harrison*, 24 id., opinion, 171.) If Rufus Steere had previously to the 1st day of December, 1865, conveyed the house lot, the party receiving such conveyance and holding title thereunder would without doubt have been entitled to the benefits of the equitable doctrine, that Steere had become the principal debtor to the plaintiffs for the payment of his bond and mortgage, and the mortgagor his surety, and that the land conveyed by the deed of December 1, 1865, was the primary fund for the payment of such debt, and the other land, the house and lot, was merely security for the payment of the balance, if any, remaining after exhausting the primary fund. (*Woods* v. *Spalding*, 45 Barb., 607; *Stuyvesant* v *Hall*, 2 Barb. Ch., 151; *Warfield* v. *Crane*, 4

Abbt. Court of App. Dec., 525.) Rufus Steere, however, continued to be the owner of the house lot, when he received the deed of the remaining part of the mortgaged premises. The most material point in the determination of the case in my view is the decision of the question, whether the execution of this deed by the parties operated as an agreement between them, that the land therein mentioned should be the primary fund for the payment of the debt, and that the mortgage should be enforced upon that land in the first instance, and upon the house lot in case of deficiency only. If such effect is to be given to this act, the payment of the debt, to be made in the manner before mentioned, became a permanent charge upon each of the parcels of the mortgaged premises, and the subsequent mortgagees took the premises from Rufus Steere, subject to and impressed with the equities created by the conveyance to him, with his covenant therein. Each mortgagee was chargeable with notice of the provisions of the deed to Steere, and of any equitable rights derived by him from it. (*Jumel* v. *Jumel*, 7 Paige, 591; *Harris* v. *Fly and others*, id., 421.) Steere's occupancy and possession of the premises was constructive notice of such equitable rights. (*Gouverneur* v *Lynch*, 2 Paige, 300; *Trustees, etc.* v. *Wheeler*, 61 N. Y., 88.)

It appears to me that, under the peculiar circumstances of this case, no such equity arises. Rufus Steere had taken a quit-claim deed of both portions of the mortgaged premises, and both remained subject to the whole of the plaintiff's mortgage and liable to be sold thereon; he had assumed the payment of the whole of the mortgage debt, and had become personally liable to pay any deficiency that might arise after a sale of both portions of the mortgaged premises. (*Hartley Ex'r* v. *Harrison*, 24 N. Y., 170; *Burr* v. *Beers*, id., 178; *Ricard* v. *Sanderson*, 41 id., 179.) In such a case, when the successive conveyances are to the *same* party, all subject to the original mortgage, the title to all remaining in the grantee at the time of the foreclosure, and he personally liable for any deficiency arising after a sale of the whole, Rufus Steere, such grantee, could have no equity to have the property sold in parcels in the inverse order of the conveyances to him. The cases cited by the counsel for the appellant Childs, are cases in which the successive sales have been to *different* parties, and

conflicting equities have arisen between *such* parties, and no authorities that I have been able to find recognize such a thing as a purchaser of different parcels in succession, subject to a mortgage assumed by him, having an equity to have them sold away from him in the inverse order in which he purchased. It can make no difference to him which is sold first, where the whole belongs to him, and must be sold if necessary to pay the mortgage.

We think the equities between the different parties, mortgagees of Rufus Steere, are to be determined by the principle stated in Willard's Equity (1st ed.), 454, that "where a creditor has a lien upon several parcels of land for the payment of his debt, and some of the land *still belongs to the person who, in equity, ought to pay and discharge the debt*, and other parcels have been sold by him, the lands still belonging to such person *are first chargeable* with the payment of the debt; and upon principle, that as between equal equities, he who is prior in time is strongest in right, if the person who ought to pay the debt has conveyed different parcels of the land upon which it is a lien, at different times to *different purchasers*, as between such purchasers the lands are chargeable in equity in the inverse order of their alienation." The mortgage given by Rufus Steere to the defendant Lawson was prior in time to the mortgage given to the defendant Childs.

At the time the Lawson mortgage was given, Rufus Steere was the owner of the house and lot afterwards mortgaged to defendant Childs. When the Lawson mortgage was executed, the mortgagees therein named acquired the equitable right to insist that the plaintiff should exhaust his remedy against all the premises remaining owned by Rufus Steere, before selling the land mortgaged to them, and also had the right to insist upon the personal liability of Rufus Steere for the balance of the mortgage debt. The successive mortgagees took their mortgages subject to the equities in favor of prior grantees and mortgagees. (*Clowes* v. *Dickenson*, 5 Johns. Ch., 241.) For these reasons, that part of the decree which directed that the house and lot should be first sold, and the proceeds thereof applied in payment of the plaintiff's mortgage, was right.

The allowance of costs to the defendant Lawson, and the disallowance to the defendant Childs was discretionary. (Code of

Procedure, § 306, subdiv. 1; *Pratt* v. *Ramsdell*, 16 How. Pr. R., 59; *Morris* v. *Wheeler*, 45 N. Y., 711.) The General Term will not reverse or interfere with such ·discretion, except for manifest error. (*Ludington* v. *Taft*, 10 Barb. S. C. R., 448; *Belmont* v. *Ponvert*, 38 N. Y. Superior C. R., 425.) Defendant Childs, by his answer, alleged that plaintiff claimed more than was due, and upon the trial the amount claimed was reduced. Upon the issue raised with defendant Lawson, upon her right to have the house and lot sold first, he failed. The court justly refused to award costs either for or against him, and awarded costs to the defendant Lawson, to be paid from the fund.

The decree should be affirmed, with costs of this appeal in favor of the defendant Lawson, to be paid by the defendant Childs personally.

Present — Learned, P. J., Boardman and Tappan, JJ.

Ordered accordingly.