FISK, *Petitioner, versus* KEENE & *als.*

In the construction of a will, the intention of the testator, as clearly discoverable from the whole will, is to be effectuated, if it can be done consistently with the established rules of law.

In a devise to a person and his heirs, with a devise over in case of his dying without issue, the words "dying without issue" are construed to mean an indefinite failure of issue; and the word "heirs" to mean heirs of his body.

A devise over, after a devise in fee, cannot take effect as an *executory devise*, unless the event upon which it is to vest must necessarily happen within the prescribed period of a life or lives in being, and twenty-one years, and the period of gestation thereafter.

As it is not matter of necessity that an indefinite failure of issue will happen

within the prescribed period, such a devise cannot operate as an executory devise.

A devise to a person and his heirs, with a devise over, in case he should die without issue, vests in the first devisee an estate in fee tail, and a remainder in the second devisee.

Land was devised to M., his heirs and assigns, with devise over, (in case he should die without "heirs,") to his wife during life or widowhood; and at the termination of her estate, to the devisor's surviving children or their "heirs." *Held ;* —

That the devise to M. was not limited to a life estate in him ; —

That it could not take effect as an executory devise ; —

That it did not vest in M. a fee simple conditional, but did vest in him a fee tail general.

One seized in fee tail may bar the entail, and all remainders, by a conveyance in fee simple.

Such a conveyance vests an indefeasible title in the grantee.

On Report from *Nisi Prius,* Shepley, C. J., presiding. Petition for Partition.

Daniel Keene died in 1827, leaving a wife, a daughter and three sons; Abdon, Mark and Howland. He was the owner of several lots of land.

By his will, unskillfully drawn, he devised to his wife one third of his homestead farm, together with his personal estate.

He next devised *all* his real estate to his three sons, their heirs and assigns, except a quarter of the island lot, which he devised to his daughter.

The will then proceeds, "Whereas my son Mark now has no heirs, and should he never have any, I will that his wife Susan have, hold, occupy and enjoy all the share which I have herein given to said Mark, while she remains said Mark's widow, and no longer. And should my said son Mark die without issue, I give and bequeath the share I have given to said Mark, after the death or future marriage of his said wife Susan, to be equally divided among my surviving children, or their heirs."

The will then contains a devise to said Mark, of one acre, called lot A, under and around his house frame. At the making of the will in 1821, Mark was in possession of the acre, and had commenced the building a house upon it. He after-

wards completed the house and continued to occupy the lot until his death in 1845.

The will also contained a devise of "one acre, of equal value," to each of the two other sons, for a house lot, to be selected under certain restrictions. "These three acres are to be considered in the division, when made between my heirs, so that their shares may be equal among my three sons."

Abdon died in 1831, leaving six children. In 1841, four of these children, including the respondents, upon a division of the estate, representing their deceased father, by a quitclaim deed in common form, released to the petitioner all their right in a lot of land, which included lot A, with warranty against claims to be made by themselves or any person under them.

In 1845, Mark Keene conveyed to the petitioner one half undivided of lot A. Lucy, the wife of Mark, died in 1849.

This process was instituted for the purpose of getting one half of lot A set off to the petitioner.

The respondents, Jacob H. Keene and William Keene, two of the sons of Abdon Keene, and grandsons of the testator, pleaded sole seizin.

The case was submitted to the Court for judgment, according to the rights of the parties.

*Bulfinch,* for the petitioner.

1. The plaintiff has title under the deed of 1845, from Mark Keene, who took the acre, lot A, by devise in his father, Daniel Keene's will. The devise of that acre was unconditional, and gave to the devisee all the estate in the lot, which the devisor had or could devise. R. S. c. 92, § 26. It gave an estate in fee, for it is unreasonable to suppose the father would encourage the son to build the house, and then provide for it a reversioner, who might perhaps be a stranger. Mark acquired title under the will also.

2. The respondents by their own deed, on the division of the estate of Daniel Keene, released and quitclaimed a portion of the land of Daniel Keene, to Mark Keene, and that portion included the lot A, with warranty against themselves and all persons claiming under them. By R. S. c. 91, § 4,

that deed passed all their estate. They have not since acquired any new title, and are estopped now to deny the *petitioners'* title. By that deed then, so far as these respondents are concerned, Mark obtained title to the lot A. A confirmation of this view is derived from the long acquiescence of the respondents.

*Ruggles,* for the respondents.

At the death of Mark Keene, in 1845, the title which he had derived from his father's will was terminated. For, by the will, if he should die without issue, the estate was to pass to his widow for her life, and the reversion vested in the other sons of Daniel Keene, or their heirs. Abdon died in 1831. The respondents are his heirs. Upon the death of Mark's widow, in 1849, the estate in fee became the property of Daniel's heirs, and their rights are now all vested in the respondents.

Their deed of quitclaim to Mark, was given in 1841, before their title accrued. For that title did not accrue till the death of Mark without issue. It therefore conveyed nothing. Mark was living, might outlive them, might have children who, according to the will, would have inherited. They had no more title by the will of Daniel Keene than a son has in his father's estate during the life of the father.

" No right passeth by release but the right the releasor had at the time of the release made ; as if the son release to the disseizor of his father, all the right which he has or *may* have. After the death of his father, the son may enter against his own release ; because he had no right at all at the time of the release, the right at that time being in his father. Coke on Litt. § 344, 265 b.

The release was not of the *land,* but of their *title* only. The word " premises," means merely the thing which had been released ; not the land, but the grantor's title only. 13 Pick. 116.

The covenant then cannot operate as an estoppel. For, as they had no title, no action could be maintained on the covenant, there being nothing to which the covenant could

attach. Estoppels are merely to avoid circuity of action. If no action could lie, there could be no estoppel. There can be no estoppel by executory covenants not to claim a right, which is first to accrue afterwards. *Vance* v. *Vance,* 21 Maine, 364; *Gibson* v. *Gibson,* 15 Mass. 106. The deed of 1841 can therefore impart no strength to the petitioner's claim.

SHEPLEY, C. J. — Daniel Keene having a wife, three sons and one daughter, executed his will on April 24, 1821, and died on July 23, 1827. His will was approved on January 22, 1828.

The petitioner claims title to one undivided half of one acre, devised to Mark Keene, by a conveyance from him made on Sept. 22, 1845. Mark Keene died in Sept. 1845, without issue, and his widow died in May, 1849.

For the petitioner it is contended, that the devise of one acre to Mark Keene vested in him an absolute estate in fee ; that it could not have been the intention of his father to encourage him to build a house upon it, and then to deprive him of it ; that although the devise to him is without words of inheritance, he should be adjudged to take an estate in fee by the provisions of the statute, c. 92, § 26.

The provisions of that section can have no effect upon the case. They are applicable only to devises of lands, thereafter made. Even if Mark was encouraged to build a house upon that acre, his father might conclude, if he should die without issue, that his estate ought to pass to his brothers and their heirs, and might choose to make use of his own power to effect that object.

The acre lots were included in the devise of all his real estate. They were to constitute a part of " their shares" of it. The intention of the testator appears to have been to give to Mark the particular acre, where he had commenced to build, as a part of his share, so that he could not be deprived of it by a division of the whole estate, and to allow each of his other sons to select a favorite acre as a house lot, so that he

could not be deprived of it by a division, and yet to have these acres remain as part of their respective shares. The devise to his widow, upon the death of Mark, is of "all the share which I have given to said Mark." He must have intentionally included the acre in this share or she would have been deprived of her home; and the devise over, after her marriage or decease, upon the death of Mark without issue, is of "the share given to said Mark." There is therefore no sufficient reason to conclude, that the testator intended, that he should take an estate in his acre greater than in the residue of his share.

It then becomes necessary to determine what estate in that share was devised to Mark Keene.

It occasionally happens, that wills drawn by unskillful persons require for their correct construction a knowledge of some of the most recondite and technical doctrines of the law. It may be necessary in this case to notice not only rules of law respecting estates for life, estates in fee simple conditional, and estates in fee tail, but those or some of them respecting contingent remainders and executory devises. This, it is hoped, may not be necessary to any considerable extent.

A rule of construction, to which all others must yield, is, that the intention of the testator as clearly discoverable from the whole will is to be made effectual, if it can be consistently with the established rules of law.

It is therefore insisted for the respondent, that Mark took a life estate only in his share. This position upon examination is found to be inadmissible. The devise is to "my three sons, their heirs and assigns forever." Considered alone this would be a devise of a fee. No change is made of it by any subsequent clause, except upon the contingency of his dying without issue, and it was clearly the intention of the testator, that he should take the estate as first devised, if not affected by that event.

When an estate is devised in fee with a devise of it over upon the happening of a certain event, the first devisee may take an estate in fee simple conditional, and the devise over

may take effect as an executory devise; or he may take an estate in fee tail and the devise over may take effect as a remainder. Which of these results will be produced must depend upon the language used and upon the rules of law established for its construction. One of these rules is, that where a contingency is limited to depend on an estate of freehold, which is capable of supporting a remainder, it shall never be construed to be an executory devise. *Purefoy* v. *Rogers*, 2 Saund. 380.

Another is, that after a devise of the fee a devise over cannot take effect as an executory devise, unless the event, upon which it is to vest, must necessarily happen within a life or lives in being, and twenty-one years and the period of gestation thereafter. *Duke of Norfolk's case*, 3 Ch. C. 1; *Long* v. *Blackall*, 7 T. R. 100.

The words dying without issue or without leaving issue, are construed to mean an indefinite failure of issue. And a devise over after an indefinite failure of issue cannot take effect as an executory devise; for the event might not happen within the time prescribed. While a devise over upon the death of the first devisee without leaving issue behind him or living at the time of his death, or words of like import, is held to be effectual as an executory devise, for the devise over must then necessarily take effect within the prescribed time. *Pells* v. *Brown*, Cro. Jac. 590; *Roe* v. *Jeffery*, 7 T. R. 589; *Doe* v. *Welton*, 2 B. & P. 324.

Another rule is, that a devise of an estate to a person and his heirs with a devise of it over, in case he should die without issue, vests in the first devisee an estate in fee tail with a remainder to the second devisee. And the word heirs must be regarded as used in the restricted sense of heirs of his body, otherwise the limitation over would be void. *Soulle* v. *Garrard*, Cro. Eliz. 525; *Dutton* v. *Engram*, Cro. Jac. 427; *Chadock* v. *Cowley*, Cro. Jac. 695; *Fitzgerald* v. *Leslie*, 3 Bro. P. C. 154; *Porter* v. *Bradley*, 3 T. R. 143; *Hawley* v. *Northampton*, 8 Mass. 3; *Nightingale* v. *Burrell*, 15 Pick. 104; *Parker* v. *Parker*, 5 Met. 134; *Eichelberger*

v. *Burnitz*, 9 Watts, 447; *Thomason* v. *Anderson*, 4 Leigh, 118; *Hoxton* v. *Archer*, 3 Gill. & John. 199.

By the application of these rules it will not be difficult to determine what estate was devised to Mark Keene.

There is nothing in the will authorizing a conclusion that the devise over could take effect upon the decease of Mark without leaving issue living at that time. It is quite apparent, when the testator in his will says, " Mark Keene has no heirs," he must have meant heirs of his body. For there was no lack of other heirs. The devise over could take effect only on failure of such heirs, or in other words, on failure of issue, and this might not happen within the time prescribed for an executory devise to take effect. The word heirs, as used in the first clause of the devise, must be considered as used in the same sense as when used in the second clause of the devise to him, and thereby restricted to the heirs of his body, for the object clearly intended by the testator cannot be carried into effect consistently with the established rules of law in any other way, and it can be by regarding the devise to Mark not as an estate in fee simple conditional but as an estate in fee tail general.

Mark Keene, appearing to have been seized of the one acre as a tenant in tail, could, by the provisions of the statute, c. 91, § 6, convey it in fee simple and thereby bar the estate tail and all remainders.

His conveyance to the petitioner of one undivided half of it appears to have been duly executed and to have been effectual for that purpose, and he is entitled to have a judgment entered, that partition be made as prayed for.

WELLS, HOWARD, RICE and HATHAWAY, J. J., concurred.