THE LA FARGE FIRE INSURANCE COMPANY *vs.* BELL and
.others

On the 10th of September, 1850, B. executed a mortgage to C. to secure the
payment of $4,500 and interest, on four blocks of land in the village of Yonk-
ers, bounded and described by the outer limits of the whole together, and also
as lots 1, 2, 33, 34. This mortgage became due, according to its condition,
by a default in the payment of interest. On the 23d of September, 1853, B.
the mortgagor, and his wife, conveyed to G. B. by deed dated August 30th,
but not acknowledged until September 22d, 1853, four lots, Nos. 95, 96, 97
and 98, part of the original lot No. 33 included and described in the mortgage
previously given to C. By this deed these four lots were to be subject to $640
of the C. mortgage. This deed, though actually delivered about the time of
its acknowledgment, was not recorded until February 27, 1854. On the 25th
of January, 1854, B. and wife executed two mortgages to the plaintiffs, both
dated December 2, 1853, and recorded January 27, 1854. One of these was
given for $6000 upon the original lots 1 and 2, embracing 14 of the small lots,
Nos. 81 to 94 inclusive. The other was for $4000, and was upon all of the
original lots 33 and 34 to which B. then held title; i. e. all of those lots ex-
cept the subdivision lots Nos. 95, 96, 97 and 98, which had been sold and
conveyed to G. B. In March, 1854, B. and wife executed a mortgage to McK.
for $2000, upon these lots Nos. 95, 96, 97 and 98, and also upon another lot.
The plaintiffs took an assignment of B.'s first mortgage to C., and brought a
suit for the foreclosure of all three of the mortgages executed by B. The
amount due on these mortgages not being disputed, the only question was as
to the order in which the various lots should be sold, or their proceeds applied
to satisfy the incumbrances.

*Held,* 1. That the plaintiffs became purchasers of an equitable interest in all the
residue of the lands mortgaged by B. to C., including lots 95, 96, 97 and 98,
and as to that interest, viz: the right to have the first mortgage charged on
those lots, that the conveyance to G. B. was void because it was not recorded.

2. That the mortgagee C. and his subsequent grantees, or persons standing in
that relation—as G. B. and his mortgagee McK.—were entitled to the benefit of
any probable or possible surplus after applying the proceeds of that portion of
lots 95, 96, 97 and 98 included in the mortgages to the plaintiffs, to satisfy
those mortgages.

The decree therefore provided for the sale, first, of the land embraced in the
mortgage from B. to C., except the lots 95, 96, 97 and 98, and for the sale of
this in two separate divisions, according to the two second mortgages held by
the plaintiffs. After reserving the amount of these two second mortgages, each
out of the proceeds of its own parcel of these lands, the residue was directed
to be applied to the satisfaction of the original C. mortgage. And if the resi-
due of such proceeds, after deducting the amount of the second mortgages,
should not be enough for that purpose, then, and before applying the amount
reserved for the two second mortgages, the lots Nos. 95, 96, 97 and 98 were

The La Farge Fire Insurance Company *v.* Bell.

ordered next to be sold and the proceeds applied, and then the proceeds of the other parcels retained were to be applied ratably, to satisfy the C. mortgage. If any thing should remain, after this was paid, each parcel was to be charged with its own mortgage. And if there should be a surplus, after satisfying the three mortgages held by the plaintiffs, in the order and manner of applying the proceeds of the various parcels, as before directed, it was ordered to be brought into court for a proper distribution.

The right which a grantee with warranty of a portion of mortgaged premises has, to have the mortgage satisfied first out of the part remaining unsold, is an equitable and not a legal right; and therefore, any rights which the holder of the first mortgage on the whole premises may have, are not affected, nor are any obligations imposed on him, unless he has notice of the subsequent partial alienation.

The holder of the first mortgage has two funds for the payment of his debt—the portion of the mortgaged premises sold and conveyed, and the residue remaining in the mortgagor—to either of which he may resort.

The mortgagor having aliened a part, covenanting to protect his grantee against the mortgage, the grantee becomes a surety for the mortgage, as to the portion of the premises conveyed to him. He has a right, therefore, as against the mortgagee, to insist that he shall not deal with the lands not aliened, which are by the covenant of the mortgagor with him the primary fund for the payment of the debt, so as to increase his own liability, or diminish that fund; provided however, the mortgagee have notice of the facts out of which these equities arise.

An insurance company, taking mortgages subsequent in date to an unrecorded deed of the same premises embraced in the mortgages, will not be charged with constructive notice of such deed, by the fact that the grantor and mortgagor was, at the date of the deed, and at the time of executing the mortgages, a director in the insurance company.

ACTION for the foreclosure of mortgages. The material facts are detailed in the opinion of the court.

*John M. Mason,* for the plaintiffs. I. The principle that when mortgaged property is aliened by the mortgagors, at different times, to different parties, such mortgaged property must be sold under the first mortgage in the inverse order of alienation, is thoroughly established. If authority is required on that point see *Schryver* v. *Teller,* (9 *Paige,* 173;) *Guion* v. *Knapp,* (6 *id.* 35;) *Kellogg* v. *Rand,* (11 *id.* 59;) *Stuyvesant* v. *Hall,* (2 *Barb. Ch.* 151.)

II. The land is not only to be sold in the inverse order of alienation, but the mortgage is actually *chargeable,* and in

equity *charged* upon the remaining mortgaged premises at the time of the alienation of a part.   See above cases, particularly *Schryver* v. *Teller,* (9 *Paige,* 173.)

III.  A mortgagee is an alienee, to the extent of his mortgage, quite as much as a grantee.   (*Kellogg* v. *Rand,* 11 *Paige,* 59, 64.)

IV.  If there had been no deed from Bell to Bancker the mortgage of  Bell to Candee, on the whole property, would immediately upon the mortgages by Bell to the plaintiffs on the 24 lots, become chargeable on the four lots, 95 to 98.   (1.) The deed to Bancker, although given before the mortgages, yet not being recorded till after the mortgages, operates in the same way upon the equitable rights acquired under these mortgages as it would had it been upon the same real estate.   (2.) The whole object and intent of the recording acts is to protect subsequent purchasers and incumbrances against previous deeds, mortgages, &c., which would affect the rights of the subsequent purchasers or incumbrancers.   (*Stuyvesant* v. *Hall,* 2 *Barb. Ch.* 158, *and cases there quoted.*)   (3.) If there is any doubt as to the protection afforded by the strict construction of the recording acts, the court of chancery will construe that act in such a way as to afford protection to those who have equitable rights under the established law of the court.   (4.) When the plaintiffs took their two mortgages Nos. 2 and 3, they had notice of the existence of the mortgage No. 1, for $4500, covering the whole 28 lots. They had no notice of any subsequent incumbrance on lots 95 to 98, the deed to Bancker not being on record.   On the recording of their mortgages Nos. 2 and 3, January 27, 1854, the mortgage No. 1, by operation of law, and by the principles established by the court of chancery, became *on that day* chargeable and charged upon the lots 95 to 98, to the whole extent of the mortgage, ($4500,) in the same way as if it were a new mortgage, (so far as Bancker was concerned,) executed and recorded on that day.   (5.) If then the recording act is construed strictly as to the words " the same real estate," the " conveyance" to Bancker " is void as against" that mortgage or the right of other parties affected by it ; it being ." a subsequent incum-

brance" to the full extent of $4500 recorded prior to the deed to Bancker. (6.) If this doctrine is not correct the grossest frauds may be practiced under the " protection" of the recording act; as for instance : A. owning lots 1 and 2, each worth $5000, mortgages them to B. for $2000. C. wishing to buy lot 1, ascertains by examination of the record that the only incumbrance on the two lots is $2000. He knows that lot 2 is ample security for the mortgage, and that the mortgage must attach to lot 2. He pays A. $5000 for lot 1, and puts his deed on record. He then finds that A. has previously sold lot 2 to D. who has not put his deed on record, and that the mortgage for $2000, which he had supposed attached to lot 2, has attached to lot 1, because the deed to D. though not recorded is not void against him, not being on the "same real estate." The court never would permit such a fraud to be practiced under an act intended to protect against fraud.

V. There is no pretence of actual notice in this case. The property was vacant, so that there was no notice by possession. There was no actual notice to the plaintiffs. The only notice was constructive, either, 1. By the record, or ; 2. By the fact that Bell was a director of the plaintiffs' company.

VI. Knowledge by Bell, though he was a director of the plaintiffs, was not knowledge to the plaintiffs. (1.) He was not an acting director. He does not appear to have had any thing to do with the business of the plaintiffs from May 10, to January 12. All these matters occurred between those two dates. (2.) Though a director for general purposes, yet in these matters his interests were opposed to the plaintiffs : he acted in a position adverse to them. *Pro tanto* his connection with the company was dissolved. If Bancker knew he was a director, he knew also that his interests were adverse to those of the company. (3.) The plaintiffs are an insurance company. Their business, as declared by their charter, is " transacting the business of insurance on dwelling houses, stores," &c. Knowledge by their directors, or one of them, is only chargeable against the company when it is directly connected with their business of insurance, and they are not chargeable with knowledge ac-

quired by their director in a matter only incidental to the general business of the company, viz : the investment of their capital or surplus. (4.) Even if it were connected with the business of insurance, the director's knowledge of a violation of the policy would not sanction such violation, nor could *his* consent give permission to violate when his interest as insured was directly opposed to that of the company as insurer.

VI. Even if Bancker would be protected under the recording act, McKnight as holder of a mortgage on Bancker's lot, taken long after all the other papers were on record, would not be protected to the same extent. *He* had notice of the existence of all the deeds and mortgages, and was chargeable with such notice.

*A. J. Vanderpoel*, for the defendants McKnight and Bancker. I. By the common law every deed took priority from its date, or its delivery : it was valid as to all persons. (*Cruise, tit.* 32, *ch.* 29, § 1.) Since the registry acts, the deed is in no case void ; it is always good as against every person, except "a subsequent purchaser in good faith and for a valuable consideration, of the same real estate or of any portion thereof, whose conveyance shall be first duly recorded." (2 *R. S.* 162, § 1, *4th ed. marg.* 756.) It has therefore never been suggested that the deed unrecorded was not good as against the grantor and his heirs. (*Jackson* v. *Burgott*, 10 *John.* 461.) So an unrecorded deed is held to be good as against a subsequent purchaser who makes no new advance on the faith of his purchase ; e. g. one who buys and applies the purchase on a precedent debt. (*Wright* v. *Douglass*, 10 *Barb.* 97. *See cases, p.* 107.) So the recording of a second mortgage is not constructive notice to the mortgagee in the first mortgage. (*Stuyvesant* v. *Hall*, 2 *Barb. Ch.* 151.) As against such persons, a purchaser is under no obligation to record his deed, and no new right or new equity can be claimed by the omission to record. It is only those persons who are mentioned in the first section of the statute cited who can assert any right or equity as against the holder of the unrecorded deed.

II. The second mortgages mentioned in the complaint do not

cover or affect the four lots conveyed by Bell to Bancker. It was therefore a matter of no consequence to the plaintiffs whether the deed from Bell to Bancker was or was not recorded. The plaintiffs were not "purchasers of the same real estate or of any portion thereof," which was conveyed to Bancker. It is exclusively persons answering this description who are protected by, and are within, the registration act. (2 *R. S.* 162, § 1, *4th ed.* 1 *id.* 756, *marg. paging.*)

III. So, also, the plaintiffs, not being subsequent mortgagees of the lands included in the deed to Bancker, would not be affected by any thing contained in that deed. There was no duty enjoined upon them by statute to examine the record of that deed, and Bancker could not have claimed any right or privilege as against the plaintiffs by reason of any thing contained in his deed. The true proposition is that subsequent purchasers in good faith and for a valuable consideration are alone benefited by the registration act, so as to take preference of an unrecorded deed of the same premises, and on the other hand subsequent purchasers of the same premises are alone affected by the statute so as to be affected by a recorded deed. (4 *Edw.* 242.)

IV. The plaintiff not being within the registration act, no duty was imposed upon Bancker, and his deed was valid as against them. It took its priority from the date or delivery.

V. It being a valid deed, as against the plaintiffs, there can be no plausible pretense for granting the relief asked for by them. The major premise of the proposition on which they ask relief is that our deed is void as against their mortgage by reason of want of notice.

VI. In answer to the suggestion of the plaintiffs that if we had recorded our deed they might have discovered it and been more cautious in making their loan, we say, 1st. This is untrue in point of fact, for they have not shown that they made search for conveyances or used any diligence. 2d. There is no pretense, warranted by any proofs in the case, that Bell deceived them, or that he did not explain to them the exact condition of the property and of the conveyances. 3d. Bancker did not mean to deceive or mislead them. 4th. The complaint is bar-

The La Farge Fire Insurance Company *v.* Bell.

ren of any averment that the plaintiffs were bona fide purchasers·
or mortgagees.   The well established rule of equity is that a
party claiming relief as a bona fide purchaser must positively
and precisely deny all notice, although it is not charged.   (*Frost*
v. *Beekman* 1 *John. Ch.* 288.)

VII.  The defendants Bancker and McKnight, (the one as
holder of a valid deed and the other as mortgagee,) are entitled
to have the four lots charged with only $640, and interest, until
the remaining twenty-six lots shall have been sold and found in-
sufficient to satisfy the mortgage.

VIII.  Bell was a director of the insurance company at the
time of the execution of the mortgages to him; and when the
rights of third persons are in question the company must be
deemed to have notice.


EMOTT, J.   On the 10th day of September,1850, the defend-
ant Bell executed a mortgage to Edward W. Candee, to secure
$4500 and interest, on four blocks of land on certain streets in
Yonkers, bounded and described in the mortgage by the outer
limits of the whole together, and also as lots 1, 2, 33, 34, on the
map of Sampson Simpson's estate.   This mortgage has become
due according to its condition, by a default in the payment of
interest.   Afterwards, on the 23d day of September, 1853,
Bell and wife conveyed to Gerard Bancker, by deed dated Au-
gust 30th, but not acknowledged until September 22d, 1853, four
lots, Nos. 95, 96, 97, 98, part of the original lot No. 33 included
and described in the mortgage given by Bell to Candee.   By
this deed these four lots were to be subject to $640 of the Can-
dee mortgage, and to no more.   This deed was actually delivered
about the time of its acknowledgment, but was not recorded un-
til February 27th, 1854, and the lots remained until long after
that time open, lying in common, not enclosed and not actually
occupied by any one.   On the 25th of January, 1854, Bell and
wife executed two mortgages to the plaintiffs, both dated Dec.
2, 1853, and both of which were recorded January 27th, 1854, a
month before the recording of Bancker's deed.   Of these, one
was given for $6000, upon the original lots 1, 2, comprehending

The La Farge Fire Insurance Company *v.* Bell.

14 of the small lots on the map, Nos. 81 to 94 inclusive. The other was for $4000, and was upon all of the original lots 33 and 34, to which Bell then held title, that is, all of those lots except the subdivision lots Nos. 95, 96, 97, 98, which had then in fact been sold and conveyed to Bancker. In March, 1854, Bancker and wife executed a mortgage to the defendant John L. Mc-Knight, for $2000, upon these lots Nos. 95, 96, 97, 98, and also upon another lot not part of this property, and worth about $500. The plaintiffs have taken an assignment of Bell's first mortgage to Candee, and have brought this suit for the foreclosure of all three of the mortgages made by Bell, but of course the rights of all of these parties are to be considered as if these mortgages were all represented by their original holders. The amount due on these various incumbrances is not in dispute, and the only question in the case, or which was argued at the hearing, is raised by the prayer of the complaint, and the answer of the defendant McKnight, and relates to the order in which these various lots of land should be sold or their proceeds applied to satisfy those incumbrances.

The defendants Bancker and McKnight claim that as the lots Nos. 95, 96, 97, 98, were aliened in fact before any other charge or conveyance had been made of the residue of the property by Bell, these lots should not be sold or their proceeds applied to pay the original Candee mortgage, except to the extent of the $640 expressly charged upon them by the deed to Bancker, until all the residue of the property covered by that mortgage has first been sold and applied to its payment. And this would un-questionably be the rule under the well settled principle of inverting the order in which the property has been aliened, unless that rule, or its application between different subsequent alienees depends, not merely upon the fact of the prior alienation of one parcel of the mortgaged premises, but also upon notice or knowledge of such alienation by subsequent grantees or mortgagees of the whole or any portion of the residue.

I do not think the plaintiffs can be charged with constructive notice of the deed of Bell to Bancker, because Bell was at the date of that deed, and at the date of the mortgages made by him

to the plaintiffs, a director of the company. Nothing like notice in fact is shown. Bell attended but two meetings of the board, one in May, 1853, and one in January, 1854; and it is not pretended that he gave the company, or any of its officers, actual notice of his conveyance to Bancker, which was made after the former and before the latter of these meetings. And it must be observed that the mortgages, as to which the plaintiffs are to be affected with notice of this conveyance of Bell, were made by him to them, the loan was obtained by him from them, and he was acting for himself directly and not for them, in these transactions. And if his position as a director could make him the agent, or rather identify him entirely with the plaintiffs in such sort as to charge them with constructive notice of all the facts with which he was personally acquainted, as to the title to lands in which they had any interest, in any case, it could not be so when he did not become concerned as their especial agent, or transact business in their behalf. Most clearly it cannot be the case where the facts concerned his own private affairs, and the transaction was one in which he was dealing with the company as a third party on his own behalf, and acting for himself with and against them.

The deed from Bell to Bancker was not recorded until after the mortgages from Bell to the plaintiffs had been put on record, and no possession, or notice in fact of that conveyance, is alleged in the case, except as inferred from Bell's relation to the company; and therefore the question to be determined is whether the defendant Bancker and his mortgagee McKnight are entitled, without any proof of notice of the deed from Bell to Bancker to the holders of these mortgages on these two parcels of the property, to have all the lots not embraced in the conveyance to Bancker, including the lots covered by these second mortgages, sold, before resorting to Bancker's property to satisfy the first mortgage, according to the ordinary rule when all the conveyances are recorded or known, or when one conveyance has been made by the mortgagor. This involves the question how far the registry act applies to the case; and whether the recording of this deed of lots Nos. 95, 96, 97 and 98, if it had been made

in season, would have been notice to the subsequent grantees or mortgagees of any of the residue of the property, so as to postpone their equities to those growing out of the prior conveyance of these lots.

Of course, as between the mortgagor and his grantee of a portion of the mortgaged premises, the rule is well settled. There no question of notice can arise, and all that is to be done is to apply the equity which grows out of the relation which the parties necessarily bear. to each other. But the right which a grantee with warranty of a portion of the mortgaged premises has to have the mortgage satisfied first out of the part remaining unsold, is an equitable and not a legal right, and therefore any rights of the holder of the first mortgage on the whole premises are not affected, nor are any obligations imposed on him unless he has notice of the subsequent partial alienation. The holder of the first mortgage has two funds for the payment of his debt—the portion of the mortgaged premises sold and conveyed, and the residue remaining in the mortgagor—to either of which he may resort. The mortgagor having aliened a part, covenanting to protect his grantee against the mortgage, that grantee becomes a surety for the mortgage, as to the portion of the premises conveyed to him. He has a right, therefore, as against the mortgagee, to insist that he shall not deal with the lands not aliened which are by the covenant of the mortgagor with him the primary fund for the payment of the debt, so as to increase his own liability or diminish that fund, provided however the mortgagee have notice of the facts out of which these equities arise. A release, by the mortgagee, of all or any of the property remaining in the mortgagor, after he has had notice of an alienation of a portion, is a discharge, *pro tanto*, of that portion of the premises. (*Guion* v. *Knapp*, 6 *Paige*, 42. *Stuyvesant* v. *Hall*, 2 *Barb. Ch.* 151.) But it never operates as such a discharge without such notice. If, in this case, the plaintiffs or Candee had released a portion of these premises after the conveyance to Bancker, or had covenanted not to resort to any such specified portion until after the residue, including the lands so sold and conveyed, had been applied and

exhausted, still that would not have operated to discharge Bancker, or the lots purchased by him, unless it had been done by the mortgagee after notice or with knowledge of the fact of the conveyance to Bancker.

Now at the time of the execution of the two mortgages by Bell to the plaintiffs, in December, 1853, neither the plaintiffs nor Candee, then the holder of the prior mortgage, knew that the deed of the four lots had been made to Bancker. If, therefore, on that day Candee had released from his mortgage, to the plaintiffs, the lots included in their two mortgages, or had covenanted with them that he would not seek to collect his mortgage from their lots until all the residue of the lands had been exhausted, it is plain that Bancker could never have complained of such a transaction, nor avoided the effect of it either in respect to the original mortgage of Candee or the subsequent mortgages to the plaintiffs on the lands included in them. It is true this was not done in form, but the plaintiffs took their two mortgages, knowing that the original mortgage to Candee covered much more land, in addition to that on which their security rested, and supposing that all that land remained subject to that mortgage. They therefore acted upon the faith that equity would compel the holder of the larger mortgage to resort to all the residue of the premises covered by his mortgage before resorting to that on which they loaned their money. They advanced the money, took their mortgages, and recorded them so as to give the holder of the first mortgage at least all the notice which their registry would afford, of their rights so as to affect his conscience, and create the equity of parties standing in the relation of sureties with reference to the residue of the lands. They thus became in effect sureties for the mortgagor, as to the residue of his lands, and they became such sureties without notice of the existence of any other suretiship or similar equitable rights of any other party. Thus they obtained an equitable right and created an equitable charge of that nature upon the residue of the lands included in the first mortgage, *eo instanti.* The defendant McKnight, who stands in the shoes of Bancker, by a mortgage executed to him by Bancker, sets

The La Farge Fire Insurance Company *v.* Bell.

up an equitable right of precisely the same nature as this by virtue of the alienation by Bell to Bancker. Both Bancker and the plaintiffs occupied the position of sureties for Bell, and if either should be called to pay Bell's debt, or any part of it, out of any portion of this property belonging to him, he would be able to call upon the other for contribution, unless one of them possesses a prior equity to the other. (*Gill* v. *Lyon and others,* 1 *John. Ch.* 447.) That priority depends not only upon the actual date of the conveyances under which they hold, but also upon the knowledge, by a notice to them respectively at the time of these conveyances, of the true state of facts and of the equities arising out of them. Any other rule would produce the most serious injustice. Second mortgages upon portions of mortgaged premises are rarely taken without considering and relying upon the equity which will arise in favor of the second mortgagee to have the first mortgage charged upon the residue of the property; and if these equities could be defeated or postponed by secret conveyances, the greatest hardship and injury would take place.

The counsel for McKnight argued, with great ingenuity and ability, that the case was not within the recording act, because the unrecorded deed to Bancker was not a conveyance of the same or any part of the same premises included in the two mortgages made by Bell to the plaintiffs, (*see* 1 *R. S.* 756, § 1,) and therefore that a record of Bancker's conveyance would not have been notice to the La Farge Insurance Company, and the failure to record it could not prejudice Bancker or his grantees or mortgagees.

If I am right in the view which I have taken of this case, the only result of the learned counsel's argument upon the registry act would be to show that in all cases between subsequent grantees of property foreclosed by a prior mortgage, actual notice is requisite to create or enforce these equities of purchasers among themselves, and the record of the mesne conveyances will not suffice in its place. I think, however, this would not be a proper view of the recording act.

The obvious answer to the defendant's argument is that it is

not as purchasers of the legal estate in the lands covered by the mortgage, but as purchasers of an equity in or against the residue, or of an equitable interest in the whole of the lands included in the first mortgage including the lands conveyed to Bancker, that the La Farge Insurance Company are to be regarded, and the statute applied.

The statute (1 *R. S.* 756, § 1) provides " that every conveyance not recorded shall be void against a subsequent purchaser in good faith of the same real estate or any portion thereof whose conveyance shall be first duly recorded." By §§ 37 38, of the same title, (p. 764,) the term purchaser is declared to include every person to whom any estate or interest in real estate is conveyed for a valuable consideration, and the term conveyance, any instrument by which any title to real estate may be affected in law or in equity. The deed to Bancker and the mortgages to the insurance company both created not only the estates they were intended to convey in the lands described and directly affected by them, but also an equitable right in the residue of the lands included in the first mortgage to Candee, to have them applied to that mortgage before resorting to the lots included in those mesne conveyances. It is with reference to their effect as creating or conveying an interest in the lands covered by the Candee mortgage, that the statute is to be applied to these conveyances. It is not a question how far the recording of the deed to Bancker might affect the title of the plaintiffs to their own land or their interest in it under these two second mortgages, but it is a question whether the insurance company have or have not an equitable right to have the first mortgage satisfied out of Bancker's land before resorting to theirs.

This right would vest in them instantly upon taking these mortgages, if these mortgages were the first mesne conveyances. It would vest by the operation of law, just as effectually as if Bell and Candee had united in an instrument assigning it to them and covenanting that the lots not mortgaged to them should assume the debt in preference to those covered by their mortgages. The La Farge Insurance Company became by this transaction, purchasers of an interest, an

The La Farge Fire Insurance Company *v.* Bell.

equitable interest it is true, but still an interest in all the residue of the lands mortgaged by Bell to Candee including these lots Nos. 95, 96, 97, 98, and as to that equitable interest thus acquired—that is the right to have the first mortgage charged on these lands—this conveyance to Bancker was void because it was not recorded.

I have assumed that a mortgage is an alienation, and it is entirely settled that it is to be so regarded for all purposes of such questions as the present. It is however, only an alienation *pro tanto*, (*Kellogg* v. *Rand and others*, 11 *Paige*, 59,) and therefore it is, only to the extent of these two mortgages and not absolutely to the whole proceeds of the lands included in them, that the rule is to be applied in this case.

The mortgagee and his subsequent grantees or persons standing in that relation, as Bancker and his mortgagee McKnight, are entitled to the benefit of any probable or possible surplus after applying the proceeds of this portion of these lots to satisfy the two second mortgages of the plaintiffs.

The decree will therefore provide for the sale first of the land embraced in the mortgage from Bell to Candee except the lots 95, 96, 97, 98, and for the sale of this in two separate divisions, according to the two second mortgages held by the plaintiffs respectively. After reserving the amount of these two second mortgages, each out of the proceeds of its own parcel of these lands, the residue will be applied to the satisfaction of the original Candee mortgage. If the residue of such proceeds, deducting such second mortgage, should not be enough for this purpose, then and before applying the amount reserved for the two second mortgages, the lots Nos. 95, 96, 97 and 98, are next to be sold and the proceeds applied. Then the proceeds of the other parcels retained will be next applied ratably to satisfy the original mortgage. If any remains after this is paid, each parcel will then be charged with its own mortgage. If there should result a surplus after satisfying the three mortgages held by the plaintiffs, in the order and manner of applying the proceeds of these various parcels herein directed, it must be brought into court for a proper distribution.

Liberty may be reserved to the defendants, Bancker and McKnight, in case the premises in which they are interested become charged with more than the share of the mortgage assumed by Bancker according to Bell's deed, to apply for a judgment over against Bell upon notice to him or his attorneys.