## BROWN *v.* SIMONS.

44  475
69  568

Where a mortgagor's assignee offered to pay the mortgage debt, at the same time producing the money in a pocket-book, a part of which was in bank notes, and the holder of the mortgage refused to receive it, without making any objection to the amount or kind of money ; — *Held,* that further proceedings were dispensed with, and that the tender was valid.

A mortgagee in possession, taking the rents and profits, can acquire no title against the mortgagor or his assignee, by a purchase of the land at a collector's sale for the taxes upon it ; but he may add the sum paid for such taxes to the mortgage debt, as expenses necessarily incurred in protecting the estate.

Where a mortgagor sells a portion of the land in different parcels, and at different times, that which he retains will in equity be held primarily liable for the whole debt ; and if not sufficient, the several parcels sold will be liable in the inverse order of such sales, beginning with the parcel last sold ; provided, however, that the previous conveyances, not registered, are subject to be postponed to subsequent registered conveyances.

The release by the mortgagee of a portion of the land mortgaged, with the knowledge of a prior sale of another portion, will operate as to such prior purchaser as a discharge, *pro tanto,* of the mortgage debt.

THIS was a bill in equity, alleging the purchase by Samuel Andrews of George W. Thayer, of a considerable tract of land in Manchester, valuable for building lots, on the 17th day of October, 1855, and a mortgage back on the same day, to secure the payment of the price ; that the land was afterward, by said Andrews, cut up into house-lots, and the greater part sold at various times to different persons ; and among others, one lot was sold to Otis Chamberlain, November 5, 1856, and by him to the plaintiff, who now holds the same ; that some of the deeds were recorded soon after they were given, and others, not until subsequent conveyances were made and registered ; that among these conveyances by said Andrews was one to A. P. Jefts of a large tract, of which said Thayer, then holding said mortgage, gave a release.

The bill further alleged, that the mortgage was still outstanding, and that the holder had made attempts to foreclose it upon the whole property ; whereas the parcels still retained by the mortgagor, and those sold by him since the sale to the plaintiff's grantor, were, as alleged by the bill, of value sufficient to satisfy and discharge the

entire mortgage debt; and the plaintiff claimed that the holder of the mortgage should first be required to make application of those parcels, before having recourse to the lot held by the plaintiff.

The bill also stated that Thayer, on December 28, 1858, took possession of the mortgaged property for the purpose of foreclosing the mortgage; and afterward and before September, 1859, assigned the mortgage to the defendant Simons; and that in the fall of that year the plaintiff called upon Simons, produced the money, and offered to pay the entire mortgage debt, but that Simons refused to receive it.

The plaintiff also offered to pay the amount now due on the mortgage; and also prayed that a receiver may be appointed, to sell the lands retained by said Andrews, and those sold by him since the sale to the plaintiff's grantor, and apply the avails thereof to the payment of said mortgage debts; and for such other and further relief, as his case might require.

The answers of Simons, and sundry others who were grantees of said Andrews, admitted the conveyances, as stated in the bill; but Simons denied that the lands retained by Andrews, and those sold since the conveyance to the plaintiff's grantor, were of sufficient value to pay the entire mortgage debt, and denied that the plaintiff offered to pay said debt, as stated in the bill; but claimed that the mortgage had been duly and legally foreclosed upon the whole of the land.

The answer also alleged that on the 15th day of January, 1859, a large portion of the mortgaged premises, including the plaintiff's lot, was sold by the collector of Manchester for the taxes of 1858, to the said Thayer, and that the tax, not having been paid within the year, the land was, at the expiration thereof, conveyed to him; and afterward, on the 17th day of February, 1860, was by him conveyed to the said Simons, who now alleged himself to be the owner of the lot claimed by the plaintiff.

The answer of Otis Chamberlain, the plaintiff's grantor, alleged that at the time of the conveyance to him he had no knowledge, information or suspicion of any incumbrance upon the land; and the answer of A. P. Jefts, one of said Andrews' grantees, stated that when Thayer assigned his mortgage to Simons, he informed him that he had before released to said Jefts his claim, by virtue of the mortgage upon the parcel sold to Jefts by Andrews.

The case was heard upon the bill, answers and proofs, and all further essential facts appear in the opinion of the court.

*S. N. Bell*, for the plaintiff.

*W. C. & S. G. Clarke*, for Simons.

BELLOWS, J.    The denial in the answer of Simons, of an offer to pay the amount of the Thayer mortgage, is, we think, overcome by the testimony of the plaintiff and Isaac W. Fogg, which sustains the allegations in the bill.    From their statements it appears that

the plaintiff, in the presence of Fogg, met the defendant Simons on the 27th day of December, 1859, and proposed to pay him the amount of the Thayer mortgage, and take an assignment of it; that Simons declined the proposal, and the plaintiff then proposed to pay it without any assignment, and took out his pocket-book and offered to pay it, he having, as he testifies, the money with him for that purpose; that Simons then said this was no place to pay the money, it being out of doors, and windy, and thereupon the plaintiff proposed to go to Simons' boarding-place, near by, and pay it, but Simons declined, and said he should not take the money until he had seen his brother; and, according to Fogg's account, on the plaintiff's asking Simons if he refused to take the money, he said he would not take it any way.

The weight of the evidence, then, is that the plaintiff had the money with him, took it out of his pocket and offered to pay Simons the amount of the Thayer mortgage, and without any conditions; and that Simons refused to take it, without making any objections to the amount, or that the money was chiefly in bank notes. The answer of Simons denies any offer to pay, but admits a conversation about redeeming the mortgage, and says it was agreed to go to Manchester and see further about it. We think, however, that the weight of the evidence is against him on that point, and sustains the bill.

Under these circumstances we think a further offer of the money was dispensed with, and that a valid tender was made; 2 Greenl. Ev., sec. 603, and note, and cases cited; *Hazard* v. *Loring,* 10 Cush. 267; *Parker* v. *Perkins,* 8 Cush. 319; *Sargent* v. *Graham,* 5 N. H. 440, and cases cited; and we also think that all objection to the character of the money was waived; *Cummings* v. *Putnam,* 19 N. H. 569.

Assuming, therefore, that the money is ready in court, for the defendant Simons, as set forth in the amendment, the plaintiff has shown a title to redeem, unless it be defeated by the sale for taxes set up in Simons' answer. Upon that point it appears that on December 28, 1858, Thayer entered into possession of the land under process, for the purpose of foreclosing the mortgage; and January 15, 1859, the collector of taxes sold a part of the mortgaged premises, including the plaintiff's lot, to Thayer, for the taxes of 1858, and not having been redeemed within the year, the said Thayer conveyed the same to Simons, to whom he had previously, on the 23d day of May, 1859, assigned the mortgage; so that at the time of the sale and payment of the money for the taxes, Thayer was himself the holder of the mortgage, and in possession under it, although the taxes were assessed in April previous, and consequently before Thayer's entry. The payment, then, was necessary to protect the estate, and the amount paid might unquestionably have been added to the mortgage debt, as expenses necessarily incurred by the mortgagee to protect the estate. *Godfrey* v. *Watson,* 3 Atk. 518; Washburn on Real Property 583, and cases cited; *Mix* v. *Hotchkiss,* 14 Conn. 32; *Williams* v. *Hilton,* 35 Me. 354; *Page* v. *Foster,* 7 N. H. 392; *Kortright* v. *Cady,* 23 Barb. 497. In fact the

mortgagee in possession holds the estate with duties and obligations analogous to those of a trustee, and is bound to make necessary repairs. Indeed, by the entry and taking possession he assumes the duties of provident owner, and in the nature of a bailiff to the mortgagee, is subject to an account for the profits. Powell on Mort. 464; 4 Kent Com. 167; *Hughes* v. *Williams*, 12 Ves. 493, note **a**; *Hunt* v. *Maynard*, 6 Pick. 491. It is accordingly held that if such mortgagee procure the grant of a new term, after the expiration of the old one, it will be in trust for the mortgagor, and redeemed with the principal. Pow. on Mort. 97, 98, and cases; 4 Kent Com. 167. So if he assign over his mortgage to an insolvent person, he will be bound to answer for the profits still; for it is a breach of trust to assign such pledge to an insolvent person; 3 Bac. Abr. 658; Pow. on Mort. 467, and cases cited.

Upon these principles we think that Thayer could acquire no title to the property mortgaged, or any part of it, by the purchase at the tax sale while he was in possession, and taking the rents and profits; but we think it was clearly his duty to pay such taxes, and add the amount to the mortgage debt.

The bill sets out that a portion of the mortgaged land is still held by the mortgagor, and that other portions were sold by him after the sale to Otis Chamberlain, under which the plaintiff claims, and that these lands are sufficient to pay off the entire mortgage debt, without touching the tract claimed by the plaintiff; and the bill prays that those lands may be sold by a receiver, and the proceeds applied to extinguish the mortgage, and also prays for general relief. And the question is, whether the lands retained by the mortgagor, and those sold since the conveyance under which the plaintiff claims, ought first to be applied to the discharge of the mortgage.

In respect to that which the mortgagor still retains, the law is well settled, that it stands primarily liable for the payment of the whole debt; while that which he has sold is chargeable only for the deficiency after the other has been applied. In principle it is much like the case where one creditor has security upon two funds, and another creditor upon one of them only; and then a court of equity is constantly in the habit of decreeing that the first incumbrancer shall look first to the fund on which the other has no lien. If a mortgagor, who had sold a part of the property, should himself pay the whole debt, it is quite clear that he could not call upon his grantee for contribution; for he has merely paid his own debt. Nor could any one standing in his place, as the heir or person purchasing merely the equity of redemption, call for such contribution. In the case of the sale by the mortgagor of all the mortgaged property to different purchasers at the same time, their equities must be regarded as equal, and each must contribute ratably to the discharge of the common burthen; but if such conveyances are at different times, their equities, though equal as respects the mortgagor, are not equal as respects each other; because, as the land last conveyed, while in the hands of the mortgagor, was primarily liable for the whole debt, it is not equitable that its character

should be changed and the charge upon it diminished by a subsequent conveyance; and beside, if the equities were to be regarded as equal, that of the first purchaser is prior in point of time, and neither having the legal title, the maxim, *qui prior est in tempore, potior est in jure*, must apply.

This doctrine is established we think by a great preponderance of authority. Wash. R. P. 570, and cases cited; 4 Kent Com. 179, notes a and b; *Clowes* v. *Dickinson*, 5 Johns. Ch. 240; *James* v. *Hubbard*, 1 Paige 234; *Jenkins* v. *Freyer*, 4 Paige 53; *Ginon* v. *Knapp*, 6 Paige 35; *Patty* v. *Pease*, 8 Paige 277; *Skiel* v. *Spraker*, 8 Paige 195; *Schryver* v. *Teller*, 9 Paige 173; *Howard* v. *Halsey*, 4 Sandf. 565; *La Farge Ins. Co.* v. *Beel*, 22 Barb. 54; *Gates* v. *Adams*, 24 Vt. 71; *Chase* v. *Woodbury*, 6 Cush. 143; *Blake* v. *Morse*, 3 Halst. Ch. 509; *Shannon* v. *Marselis*, 1 Sax. Ch. (N. J.) 413, 421; *Henklee* v. *Allstadst*, 4 Gratt. 284; *Jones* v. *Myrick*, 8 Gratt. 179; *Britton* v. *Updike*, 2 Green Ch. 125; *Wickoff* v. *Davis*, 3 Green Ch. 224; Hilliard on Mort. 237, and cases cited.

It is true that doubts of this doctrine are expressed by Mr. Justice *Story* (2 Eq. Jur., sec. 1233), and a different rule seems to have been adopted by the Vice Chancellor in *Barnes* v. *Racster*, 1 Young & Coll. 406; and yet it is held otherwise in Kentucky. *Dickey* v. *Thompson*, 8 B. Mon. 312. Yet we think the weight of authority is strongly in favor of the rule we have stated, and that upon principle the last purchaser can not be regarded as standing upon the same ground as the first.

In *Hartley* v. *O'Flaherty*, Lloyd & G. Cases Tem. Plunket 216, Lord *Plunket* holds that "if a mortgagor sells a portion of his equity of redemption for value, or good consideration, the entire residue undisposed of by him is applicable in the first instance to the discharge of the mortgage, and in ease of the *bonâ fide* purchaser; and it is contrary to any principle of justice to say that a person afterward purchasing from that mortgagor, shall be in a better situation than the mortgagor himself in respect to any of his rights."

If, however, at the time of the subsequent conveyance by the mortgagor, the grantee has no notice of the prior conveyance, in fact or constructively (the same not having been registered), such subsequent grantee ought not to take the land so granted, subject primarily to the whole debt. On the contrary, as the prior grantee has failed to record his deed, and thus give notice of the true state of the title, the subsequent grantee, unless otherwise notified, may rightfully regard the land, which is thus apparently in the hands of the mortgagor, as primarily liable for the whole debt.

It is true that the first grant by the mortgagor of a part of the property does not in terms impose a lien upon what is left; but in effect it creates upon it, as between the parties, a new incumbrance, and makes it liable primarily for the whole debt, as much as if such mortgagor had mortgaged it to such purchaser to indemnify him against the original mortgage.

It makes a case then that clearly comes within the spirit of our statute of enrollments, which is designed for the security of subsequent purchasers and creditors, to give notice of all conveyances of

any estate in lands, whether legal or equitable. 1 Story Eq., sec. 403; *Parkist* v. *Alexander*, 1 Johns. Ch. 398; 4 Greenl. Cr. 448, 452, and notes; *General Ins. Co.* v. *Ins. Co.*, 10 Md. 517; *Brush* v. *Weare*, 15 Pet. 113.

The Middlesex Register Act, which requires to be enrolled "all deeds and conveyances," was held to extend to every species of deed or instrument by which lands may be conveyed or affected; and therefore an appointment under a power is considered as a conveyance within the register acts. 4 Greenl. Cr. 448; *Scrafton* v. *Quincy*, 2 Ves. Sr. 413. In that case it was contended that this deed was not a separate conveyance, but only the execution of a power under a deed that was registered; but the court held that if this construction was to prevail, there would be an end of the registry law, for by this means a secret deed might be set up to defeat him who had registered before; and the court say the case is clearly within the mischief recited, which is to prevent a party from being defeated by a secret or pocket-deed.

In *Brush* v. *Weare*, before cited, the court, in discussing the general doctrine of notice, lays it down that "no principle is better established than that a purchaser must look to every part of the title which is essential to its validity." And again, it is laid down in the same case, that "the law requires reasonable diligence in a purchaser to ascertain any defect of title. But when such defect is brought to his knowledge, no inconvenience will excuse him from the utmost scrutiny."

In accordance with such views it was held, in *Reeder* v. *Barr*, 4 Ohio 458, that where a patent was issued to Newell, the assignee of Henson, Reeder's administrator, a subsequent purchaser was charged with notice of the equitable rights of the heirs of Reeder, because, by the laws of Ohio, an administrator has no power, unless authorized by the court of common pleas, to convey an interest in land.

So in *Brush* v. *Weare*, it was held that as the executor had no power of sale, unless given him by the will, the purchaser was bound to look into the will, and see if such power was given. See, also, *Backman* v. *Charlestown*, 42 N. H. 134.

If the first conveyance by the mortgagor after the mortgage, is duly registered by the grantee, he has done all that he can do to give notice of the new burthen that is thereby thrown upon the part which is retained by the mortgagor; and a second purchaser, charged, as he clearly is, with notice of the mortgage upon the whole land, and when the deed is registered, knowing that the extent of the burthen upon his own purchase must depend upon the fact of there having been a prior conveyance by the mortgagor, would, upon due inquiry, and in the exercise of reasonable diligence, be led by the record to a knowledge of the true state of the title, and the extent of the incumbrance upon the land conveyed to him. This he is directly interested to know, and the first purchaser has placed the means of knowledge reasonably within his reach, and it is his own fault if he neglects to avail himself of it. In the examination of the title to the part he proposes to buy, he is led directly to the original mortgage, and he finds that his is but part

of an entire tract in which his grantor has only a right of redemption, and which was originally subject to a common burthen, but liable to be affected by a prior sale of another part of the entire tract. Under such circumstances the different parcels of the tract mortgaged can not, we think, be regarded as separate and distinct, so as to relieve him of the duty to inquire into the title to the other part; but we think that in examining the title to the part he proposes to buy, he is led directly to a deed that puts him on inquiry as to the remaining part of the land; 2 Fonbl. Eq., B, 3, ch. 3, sec. 1, n; 4 Greenl. Cr. 452, n; *Parkist* v. *Alexander*, 1 Johns. Ch. 398. In accordance with these views is the doctrine of *Chase* v. *Woodbury*, 6 Cush. 143, where a mortgagor conveyed the whole of the mortgaged property to S & R; to each an undivided half; and S, having recorded his deed, conveyed his half to C before the deed to R was registered; and upon the payment by the representative of R of the whole mortgage debt, it was held that he could not require contribution of C, because C had purchased without any notice of the sale to R, and might, therefore, rely upon the other half being first held for the whole debt; although, had the deed to R been recorded, it would have been notice of a lien on the land sold to S, equally with the other; but the failure to record it was a failure of one claiming an incumbrance, namely, a lien on the estate for a contribution for one half the money he might pay to redeem it; and this, the court held, stood upon the same footing as if R had a mortgage from the first grantor which he had failed to record. The result of this case is, that a party, purchasing a part of an estate under mortgage, would be charged with notice of a registered conveyance of another part, when the effect would be to render his part so purchased liable to contribution equally with the other; and for the same reason he would be charged with such notice in a case where the effect would be to make his purchase primarily liable for the whole debt. The case of *Chase* v. *Woodbury* is directly in point, and fully sustains the views we have expressed.

It is true it has been suggested that this right to have first applied the lands remaining in the mortgagor's hands, and those last sold, is a mere equity, and not a lien or incumbrance that comes within the provisions of the register laws; and so it is directly held, in *Ellison* v. *Pecare*, 29 Barb. 333, and therefore it was decided, that the deed first delivered would take precedence over a subsequent deed of another parcel, although the latter was first recorded.

In this case, however, it appeared that neither of these purchasers had knowledge of the original mortgage at the time of their purchase; and the court expressly decline to give an opinion as to the result; had the second purchaser known of the existence of the mortgage, and had he examined the records, and, finding no previous conveyance, been induced to buy, supposing in good faith that he was the first purchaser, in which case it is said there would be some show of equity in favor of the second purchaser.

In the case of *LaFarge Fire Ins. Co.* v. *Bell*, 22 Barb. 54, it was held, upon much consideration, that the register act, which provides that "every conveyance not recorded shall be void against a subse-

quent purchaser in good faith, of the same real estate, or any portion thereof, whose conveyance shall first be duly recorded," does apply to the equitable right which is acquired by a purchaser of a parcel of the mortgaged property, to have the residue first applied to the payment of the mortgage debt; and that such equitable right will not be defeated by a prior conveyance of that residue, unless it be by deed duly recorded, or other notice at the time of his purchase; and the reasons assigned for this doctrine are in no degree shaken by the subsequent case of *Ellison* v. *Pecare*, which appears to have been decided without an examination of the case of *Ins. Co.* v. *Bell.* Indeed, it is difficult to see how any other result can be reached. The deed of a parcel of the tract mortgaged carries with it a well established right to require the mortgagee first to exhaust the residue in the hands of the mortgagor before applying the parcel so conveyed; and whether this right can be enforced only in equity or not, it is clearly a substantial interest in such residue, and one which it is the policy of the registry laws to protect. See *Montgomery* v. *Dorion*, 6 N. H. 255; *French* v. *Gray*, 2 Conn. 108; 4 Kent Com. 456; *Brown* v. *Manter*, 22 N. H. 468.

Our opinion therefore is, that the p aintiff has still the right to redeem the mortgage held by the defendant Simons as the assignee of Thayer; that the purchase by Thayer at the tax sale can not be set up against the title of the mortgagor, and that the lands still retained by the mortgagor shall first be applied to the discharge of the mortgage; and if not sufficient, that the parcels sold by him shall be applied in the inverse order of the times of such sales, beginning with the parcel last sold; provided, however, that previous sales, not registered, are subject to be postponed to subsequent registered conveyances, upon the principles before stated; and we are also of the opinion that a release by the mortgagee of a part of the land, with notice of the sale to the plaintiff's grantor, will operate, as to the plaintiff, as a discharge *pro tanto*. *Guion* v. *Knapp*, 6 Paige 43; *Patty* v. *Pease*, 8 Paige 285; *Ins. Co.* v. *Bell*, 22 Barb. 54; 1 Wash. R. P. 572, and cases cited; *Taylor* v. *Maris*, 5 Rawle 51; and these cases go to the point that without such notice such release will not be a discharge.