Swing, J.
This cause came into this court on appeal, and was heard upon the demurrer to the petition, which demurrer was overruled, and thereupon the cause was heard upon its merits.
The plaintiff alleges that it is a corporation organized under the laws of Ohio for the purpose of constructing and operating a street railroad within the city of Hamilton, Butler county, Ohio, and between said city of Hamilton and the city of Cincinnati, Hamilton county, Ohio. That *392 it haB acquired a franchise and grant from the municipal authorities of said city of Hamilton to construct, operate and maintain an electric street railroad within the corporate limits of said city and along certain streets specified in said petition, one of which is Front street. That the said defendant has an easement over, and has constructed and is operating a steam railroad over and along, Sycamore street in said city, and that in order for plaintiff to construct its street railroad, it is necessary to cross the tracks of the defendant’s steam railroad at said Front and Sycamore streets; that said defendant is in certain unlawful ways preventing said plaintiff from putting in its said crosings, and an injunction is asked against said unlawful inbeiiüiéneo, 1
To this petition the defendant answered and averred:
First. That the plaintiff was not a steam railroad, but was an electric interurban railroad, organized for the purpose of constructing, operating and maintaining a railroad in and between the city of Hamilton, Butler county, Ohio, and the city of Cincinnati, Hamilton county, Ohio, a distance of twenty-five miles.
Second. That said plaintiff had not complied with the provisions of the law passed April 27, 1896, as amended April 25, 1898 (92 O. L., 315, and 93 O. L., 334, Bates’ ■Statutes, section 247f), and had no prepared or presented to the commissioner of' railroads of the state any interlocking or safety device for such crossing to the satisfaction of said commissioner, and that the crossing proposed to be made did not comply with said law.
Third. That said plaintiff had not complied with the provisions of the law passed April 21, 1898 (92 O. L., 154, Bates’ Statutes,3365-28), and had made no agreement with the defendant as to the construction of any overhead wires or trolley, or the heighth thereof, nor has it attempted to make any agreement with reference to such trolley wire, nor has it secured the approval of the commissioner of railroads and telegraphs of the state of Ohio as to the heighth of the trolley wire proposed to be placed over the tracks of the defendant, as required by said section.
Fourth. That plaintiff had never obtained any right by -agreement with the defendant, or by appropriation pro *393 ceediugs, to cross the tracks of the defendant, and that the plaintiff was seeking to appropriate the property of the defendant without compensation.
To this answer the plaintiff replied, in which it denied:.
First. That its road was an electric railroad, but avers that it is a street railroad.
Second. That the law of April 25, 1898, had no application to the construction or operation of a street railroad, and that it was not required to have the approval of the commissioner of railroads and telegraphs to cross the tracks-of a steam railroad at grade.
Third. That it had complied with the provisions of the law of April 21, 1898, by placing all its wires that crossed defendant’s tracks, twenty-five feet above the top of the rails of said steam railroad.
Fourth. It denied that the defendant had any property rights in said Front street which plaintiff was required to appropriate or compensate defendant therefor.
The statutes of the state of Ohio relating to railroads are-separate and distinct from those relating to street railroads, and the legislation as to each has been carefully kept separate, and the statutes as to railroads do not apply to street railroads, unless made to do so by clear reference. We are of.the opinion that the plaintiff is a street railroad, at least within the city of Hamilton. It is denominated a street railroad, and is given the use of the streets as a street railroad not differing in any respect from other street railroads;, and as the legislature by an act passed March 19, 1896 (92 O-, L., 79, Bates’ Statutes, section 2780-17), classifies suburban and interurban railroads, whether operated by electricity, animal, or other motor, as a street railroad, it would seem that the plaintiff’s road outside of the corporate limits-of the city of Hamilton is to be controlled by the statutes-governing street railroads.
The main reason assigned why the plaintiff should not be entitled to lay its crossing at the point in controversy, arises from the construction to be placed on the law as found in 92 O. L., 315, as amended in 93 0, L., 334. We are of the opinion that said act does not apply to electric street railroads. Most all street railroads are now electric street’ railroads; it is almost the universal kind of street railroad: *394 in the whole country. We have very many provisions in our statutes which apply to street railroads, and all of these statutes which are intended to apply to street railroads use the word “street.’’Here the word is “electricrailroadbesides,if intended to apply to street railroads, it would seem incredible that it should only apply to crossings hereafter to be constructed, and not as well to those already constructed. The only reason for its passage was probably the protection of human life, and if thought necessary to be applied to crossings hereafter to be constructed, it would be just as necessary to those already constructed, and the number constructed in the state must be very many indeed and largely in excess of those that will be constructed for years to come. The primary object of the law was to provide for railroads to cross without stopping when interlocking devices were used. Steam railroads were never required to stop at street railroad crossings, therefore it could have no application to steam railroads crossing a street railroad. It could not in the nature of things apply to street railroads crossing steam railroads, for there could be no desire or occasion for a street railroad to want to cross a steam railroad without stopping, It is no hardship on a street car to stop; time is not so pressing but what they can verv well stop. It seems to us that the provisions of the statutes for the protection of street cars are abundant and a great deal more ■suitable than the interlocking contemplated by these provisions (88 O. L., 581, Bates’ Statutes, sections 344-3-5 and 3443-7). The wisdom of the law that requires that they should stop and send a man ahead must be manifest to every one, and before such a wise provision of the law should be dispensed with there should appear some good and sufficient reason therefor.
There was apparently a good reason why a steam railroad should want interlocking devices so that trains might pro ceed without stopping. The time and expense required by -an express train to stop, for instance, is a very considerable item. Nothing but necessity should stop them, and when perfect safety could be had by putting in interlocking devices, it is very desirable that such should be done, but all these elements are lacking so far as street railroads are concerned. It requires neither time nor expense to stop a *395 street ear; there is no necessity to run over a steam car track at full speed, in fact it cannot well be done. As far as a street car is concerned, there is about as much necessity for having interlocking devices when crossing street car tracks, as when crossing steam car tracks. All that is required of a street car when crossing a steam railroad track, is to stop and look and listen, and this can be done without interlocking, under the present provisions of the statute. It seems to be too plain to admit of any question but what section one of this act was only intended to apply to steam railroads or electric roads operated as steam railroads, and not to street railroads, although operated by electricity. If the first section does not apply, it would hardly be expected that the third section, which certainly is intended to be a part of the same subject matter, should be applicable to an entirely different matter. To introduce an entirely different subject in the third section would be a very clumsy piece of legislation. The various provisions of our statute have always treated steam railroads and street railroads separately, and the necessities of the case seem to require this as they have little in common. To have an act to apply to both without designating both steam and street, would hardly be expected, and the fact that the word “electric” is used would not do away with this necessity, although street cars use electricity; for if street cars use cable, or horses, or any other power, there would be the same reason for these devices as for street cars using electricity. We think street car crossings were not in the purview of the legislature when these acts were passed.
The law of April 21, 1898 (93 O. L,, 154, Bates’ Statutes, section 3365-28), expressly provides that all telegraph, telephone, electrio light or other wires of every kind constructed over the line of any steam railroad within the state of Ohio, shall clear the top of the rails at least twenty-five feet, except in case of trolley wire crossings, when such heighth, as may be agreed upon and is approved by the commissioner of railroads and telegraphs, shall govern. It is very evident that the only wire that can be strung at a less heighth above the tracks of a steam railroad than twenty-five feet is the trolley wire, and this wire can only be placed at a less heighth by agreement of the parties, when ap *396 proved by the commissioner of railroads and telegraphs. If the trolley wire is placed twenty-five feet above the track, the same as the other wires, there is no necessity for the approval of the commissioner of railroads and telegraphs.
So long as it is a settled law of this state that a street railway is not an additional burden to that of the easement which the general public has in the street, and that the street railroad company’s right to use a street is founded on that easement, that long it must be held that the right of such a street railroad to cross over the tracks of a steam railroad laid on such street, is subject to no conditions other than those to which the general public is subject in traveling over such street. When the C. H. & I. R. R. Co. obtained its right of way over and along Sycamore street, it did so subject to the right of the general public to use that street and the street crossings over the railroad track, including the crossing at Front street. Pedestrians and carriages and omnibuses and all other vehicles have a right to pass along Front street and cross the tracks of the C. H. & I. R. R. Co. A street car running upon rails laid upon the surface of the street and used in the ordinary way under the regulations of city authorities, is merely another sort of carriage. The O. H. & I. R. R. Co. having obtained its right of way subject to the burden of the easement of the public in general in Front street, the plaintiff’s company by virtue of the grant made to it by the city council of the city of Hamilton, being entitled to the use of that easement, all the rights the C. H. & I. R. R. Co. obtained in Front street for its steam railroad were subject to the right of the street railroad to use the street. In short, the C. H. & I. R. R.’s rights obtained in the use of Front street for its steam railway, were subject to the burden of the street railway’s use thereof in the ordinary and proper manner for its street railway; and the street railway purposing to use Front street at the crossing on Sycamore street in the ordinary and proper manner for the construction of a street railroad crossing it would therefore not be a taking of private property without just compensation, because it does not purpose to take from the C. H. & I. R. R. Co. anything it ever owned. It never owned its right of way over and across Front street free from the burden of the public *397 easement, a part of which easement belonged to the street railroad company, R. R. v. Cummins, 14 Ohio St., 523; Pelton v. East Cleveland R. R. Co., 22 Bull., 67; Simmons v. Toledo, 8 C. C., 535; Chicago & Calumet Terminal R. R. Co. v. Whiting, 139 Ind., 297; Chicago, Burlington & Quincy R. R. Co. v. West Chicago R. R. Co., 156 Ill., 255.
W. O, Shepherd and W. S. Giffen, for Plaintiff.
H. D. Marshall and Millikin, Shotts & Millikin, for Defendant.
The injunction will be made perpetual.
Cox and Smith, JJ., concur.
Note — In the Supreme Court — S. n., C. H. & R. R. R. Co., plaintiff in error, v. C. & H. Electric Str. R. R. Co., defendant in error. Affirmed by Supreme Court without report.

Synopsis of Briefs of Counsel in the Supreme Court.

The questions made in this ease in the supreme court, on error to the above judgment of the circuit court, were, 1st. Does the act of the legislature of April 27, 1896 (92 O. L., 316), which provides: “In case one railroad company or an electric railroad company shall hereafter seek to cross at grade with its track or tracks the track or tracks of another railroad company, the railroad company or electric railroad company seeking to cross at grade shall be compelled to interlock such crossing to the satisfaction of said commissioner to protect such crossing, and to pay all the costs of such appliances, together with expense of putting them in.” The C. H. & I. R. R. Co., plaintiffs in error in the supreme court claimed that this statute applies to electric railroads of which it contends the C.& H.E1. Street R. R. is one, and until this statute is complied with, the defendant in error would have no right to put in a crossing until the same was approved by the commissioner of railroads, and an interlocking or safety device was put in as required by the above section of the statutes. Defendant in error denies this claim.
2d. Did the defendant in error, without any agreement entered into between the plaintiffs and defendants in error, or without appropriation, or consideration, have the right to enter upon the right of way, interfere with the tracks and place a crossing across the right of way, and tracks of the plaintiffs in error, against the protest and over the objection of the plaintiffs in error? The plaintiffs in error claim that the defendants in error had no such right, and that they were trespassers and wrongdoers when they entered upon and took possession of the property and tracks of the plaintiffs in error for the purposes of appropriating to their use and constructing a track thereon *398 and thereover. The defendant in error claims that it bad such right.
3rd. Was the circuit court right in enjoining the plaintiffs in error, and thereby preventing them from protecting their property, and authorizing the defendant in error to plaoe a crossing on their track, and operate their cars thereover, over the objection and against the protest of the plaintiffs in error? The defendant in error claims that the court had the right to do so whilst the plaintiff in error olaims that in so doing the circuit court overlooked secs 1 & 19, art. 1, of the constitution, and also erred as to the law in such cases
B. D. Marshall, for C. H. & I. R. R. Co., plaintiffs in error, contends as to the first question, that the word “railroad” as it is generally understood, means a railroad operated by steam, and run and operated as a common carrier, and that an “electric railroad” is one that is operated by electricity; that the statutes with reference to street railroads at the time they were passed, had no application to an electric railroad or to an interurban, for the reason that no sucn railroads existed, or were anticipated, and the court will take judicial notice of the fact that after this act was passed in April, 1896, for two years thereafter, all electric or interurban roads, all of which were operated by electricity, conformed to the provision of this act and made application to the railroad commissioner of Ohio, presenting plans and interlocking devices for his approval. There has been no interpretation of this act except by Judge Nye in the common pleas of Lorain county, O., reported in 5 Nisi Prius Reports, 83, and the case at bar wherein the common pleas judge of Butler county held the same as did Judge Nye, while the circuit court held to the contrary.
As to the second question, claimed that the O. H. & I. R. R. ■Co. had more than a mere easement in Sycamore street, and that therefore the defendant in error was required to obtain,by agreement from the plaintiffs in error, or by appropriation, the right to cross the tracks and right of way of the O. H. & I. R. R. Co. The ordinance of the city of Hamilton of December 19, 1853, contains the agreement between the Village of Hamilton •and the Junction R. R. Co. (the predecessor of the C., H. & I. R. R. Co.) wherein upon terms tne Junction Railroad Company was given rights along what is now Sycamore street, and whereby the railroad company was required to purchase, appropriate or otherwise obtain sufficient grounds alongside the south of their road between Third and Water streets, to afford room for a street on the south side of the railroad, thirty feet wide, including the part of Sycamore street not occupied by the road, which should be appropriated and opened as a public street when required by the mayor and council of Hamilton after the construction of the railroad through Sycamore street. The railroad company therefore purchased the ground, and they paid for the right which they obtained, and it was no mere easement. But if it had been an easement, it was a right which the defendant in error could not enter upon and disturb without first having obtained the right so to do under secs. 1 and 19, of art'. 1 of the constitution of Ohio. Citing Reeves v. Wood County, 8 Ohio St., 345; Shaver v. Starrett, 4 Ohio St, 498; Lamb v. Lane, 4 Ohio St, 167; Watson, Executors, v. Trustees of Pleasant Tp., 21 Ohio St., 667.
*399 As to the third question, it is well said in the case of Bridge Co. et al. v. Iron Co., 59 Ohio St., 179, that when the statute was enacted in 1874, street railroads were in their infancy, and were operated by horses and mules, and whenever railroads were spoken of, steam railroads only were meant. But at the time of the passing of this act in 1896, and the amendment in April, 1898, it was just as well understood what electrie railroads were, as it was understood what steam railroads were, and the legislature no doubt had in mind just such roads as the one constructed or being constructed by the defendant in error between the city of Hamilton, in Butler county, and the city of Cincinnati in Hamilton county, a distance of about twenty-five miles.
It carries passengers, freight and- expiress, it runs cars thereon, propelled by electricity on a track runing through two counties and into two cities. If it is called an electrie street railway company, it would net change the fact, otherwise an electric street railway might be run from Toledo to Cincinnati and from Union City to the Pennsylvania state line, and if it were called an electric street railway, then the law would not apply; but if you called it an electric railway, the law would apply. Under the decision of the circuit court it would not depend upon what kind of motor power is used, what rate of speed is reached, what business is done, if they simply say they operate it as a street railway.
There is not to-day an electric railroad or a railroad operated by electricity in Ohio either in existence at the time of the passage of the act of April 27, 1896, as amended April 25, 1898, or at the present time, that does not run into some village or city, and that the cars thereof are not operated on or along a street in some village or city, and therefore if the words “electrie railroad company” do not apply to the defendant in error, then they do not apply to any railroad operated by electricity in the state of Ohio. There is but one interpretation to this statute, and that is, that it applies to all electric railroad companies operated by electricity and running in and out of cities, and in and through counties as does the railroad of defendant in error in this case.
So long as the decision of the oirouit court in this case stands unreversed, all electrie railroads in the state, can without question enter upon the property of any steam railroad, cut its tracks, materially interfere with and endanger the operation of its trains, and steam railroad companies and the commissioner of railroads can,have nothing to do in the way of preventing it or compelling such electric railway to put in any interlocking or safety device to protect the property of the railway company, the lives and limbs of its employes, and of the passengers, and the property carried over the various lines; and every interlocker or device that has been put in prior to this decision, can be taken out and taken down, and the police regulation and the protection that this law and these appliances were intendend to give, and do give, may and can be taken away.
W. O. Shepherd, and Wilcox, Ggllister, Hogan & Parmelee, (of Cleveland), for H. & C Electric Street R. R. Co , defendants in error.
The record discloses that by its corporate name the defend *400 ant in error is designated as a street railroad; that it applied' for and obtained all its grants from the public authorities as a-street railroad, and for the purpose of constructing and operating a street railroad, and was authorized under its grant from the public authorities to construct nothing but a street railroad. In the absence of any proof to the contrary, the court could not well find that it was anything other than a street railroad. And in the absence of proof to the contrary, it is to be presumed that in the actual prosecution of its business, it-is acting within the scope of the powers conferred by its articles of incorporation.
The operation of a street railroad upon the public highway is a proper street use, and does not per se constitute an additional servitude. R. R. v. Cumminsville, 14 Ohio St., 623. Pelton v. East Cleveland Ry. Co., 22 Bull., 67, and petition in error refused in this case, 19 Bull., 74; Simmons v. Toledo, 8 C. C., 535 (affirmed 31 Bull., 367.)
A street railway company which has acquired from local authorities permission to build so as to cross the tracks of a steam railroad where they intersect a street, may construct its road across such tracks without compensation to the steam railroad company. Chicago & Calumet Terminal R. R. Co. v. Whiting, etc., 139 Ind., 297; Chicago, Burlington & Quincy R. R. Co. v. West Chicago St. R. R. Co., 156, Ill., 255. Elliott on Railroads, vol. 3, par. 1136.
The occupancy of Front street by a street railway company under grant from the proper municipal authorities does not constitute the taking of the private property of the plaintiffs in error without just compensation, because it does not propose to take from the plaintiffs in error anything they ever owned. The O. H. & I. R. B. Co. does not now nor has it ever owned its right of way over and across Front street free from the burden of the public easement, a part of which public easement belongs to the street railway company by virtue of its agreement witli the city of Hamilton.
As to the dangerous character of the crossing, by sections 2501, 2502, 3437 and 3438,R.S.,the legislature has confided to the councils of municipalities all questions relating to the construction and operation of street railroads within municipal limits. It is left to the council of each municipality to determine what streets, alleys and public grounds shall be occupied for street railroad purposes, and plaintiffs in error have no right to question the exercise by the council of the city of Hamilton of the discretion confided to it by the legislature in authorizing the use of Front street for street railroad purposes. The city council of the city of Hamilton in the exercise of a lawful discretion, has found the use of Front street for street railroad purposes to'be desirable and safe, and such finding is conclusive and binding upon all other departments of the government.
As to the powers of the railroad commissioner,contended 1st, that the act of April 27, 1896 Í92 O. L., 315), as amended April 27, 1896 (92 O. L., 334), has no application to street railroads crossing steam railroad tracks; and the circuit court held that the act above referred to, does not apply to street railroads.
Steam railways crossing each other, and street railways *401 •crossing each other, or crossing steam railways, have always been controlled by separate and distinct acts. See sec. 2503, R. S., and secs. 3443-5 to 3443-7, R. S.
The iDterlocker act,of April 27,1896 (92 O.L.,315), was intended to enlarge the provisions of the last half of sec. 3333, so as to include electric railroads as well as steam railroads, and to make it possible for one company to compel the other company to join in the interlocking of said crossing.
There are but two classes of railroads known to the laws of Ohio, to-wit: railroads and street railroads. The statutes of this state relating to railroads are separate and distinct from those relating to street railroads, and the interlocker act above referred to applies only to railroads, whether operated by steam -or electricity, and, not to street railroads.
Street railroads are constructed and operated for the most part on the public highways under grants for a limited term of years, obtained from the public authorities in charge of the highways. They are designed to and do facilitate travel and transportation on the highway. The cars operated over the same are at all times under easy and quick control, and there is nothing in their construction, or in the method of their operation that seriously interferes with the common travel on the streets, They may be operated with any motive power not inconsistent with other means of travel on the streets. They may be, and for many years have been constructed by individuals as well as corporations organized for the purpose, either “within or without, or partly within and partly without” the municipalities of the state. Under the laws of this state, railroads as distinguished from street railroads, are constructed and operated by corporations whose powers are perpetual, and are conferred by their charter from the state, and are not dependent upon grants from the local authorities. They are constructed for the most part on private rights of way, and when •operated upon the highways do not facilitate ordinary travel and transportation thereon; but on the contrary, by reason of the weight and length of their trains, the difficulty of quick and easy control over the same, their high speed and the like, constitute not a facility, but a menace and danger to ordinary transportation and travel on highways. To determine to what class any particular railroad may belong, in any particular locality, reference must be had to the distinguishing characteristics above suggested.
The construction and operation of street railroads have for years been regulated by secs. 3437 t« 3413, Revised Statutes, relating to street railroads wherever located, and by s.ecs. 2501 to 2505, relating to street railroads within municipal limits. Under the above sections urban, suburban and interurban street railroads have for years been operated in Ohio. The act of May 17th, 1894 (91 O. L., 285), created no new class of railroads, but was designed to give enlarged powers to street railroad companies outside of municipalities. It is entitled “An act to regulate electric railroads;” but the body of the act itself shows that it relates “to electric street railroads, or street railroads using other than animal power as to motive power.”
If the interlocker act refers to street railroads of this class, why is it confined to electric railroads when other power than •electricity may be used on street railroads of this class. Even *402 if held to apply to street railroads of this class, it would not embrace a street railroad operated by electricity within the limits of a city, for this act regulates street railroads, incorporated for the enlarged purposes named in the act, outside of cities and villages.
The expression “an electric railroad”, as used in the inter-locker act, was not intended to apply to any street railroad, urban or interurban, whether constructed under the act of May 17th, 1894 (91 O. L., 285) or under the provisions of the law as it stood prior to the passage of the last named act, and which made ample provision for the construction of interurban street railroads before that act was passed. The term “an electric railroad”,as used in the interlocker act, has reference to a general railroad having all the characteristics, needs and necessities of a steam railroad, but using electricity instead of steam as a motive power.
The term “railroad”, as used in the interlocker act, refers to steam railroads which had aforetime been so designated; and the term “electric railroads” as used in said act, has reference to the new creation, viz: a railroad having all of the characteristics of a steam railroad, but using electricity instead of steam as a motive power. The interlocker act nowhere says that a street railroad, whether operated by electric power or otherwise, shall be compelled to interlock or provide safety devices In the enactment of laws the legislature has at all times had in mind a clear distinction between railroads and street railroads. Bridge Co. et al v. Iron Co., 59 Ohio St., 179; Green v. St. Railway Co., 62 Ohio St., 67. Act of Maroh 19, 1896, 92 O. L., 79, defining railroads and street railroads for the purpose of taxation.
The legislature having provided in the laws relating to street railroads the mode of crossing steam railroad tracks, and having defined suburban and interurban street railroads as belonging to the street railroad class, the statutes governing street railroad» must apply,and not those governing railroads. Therefore contended that the interlocker act relied upon by the plaintiffs in error, as justifying its forcible resistance to the crossing of its tracks in Front street, has no application whatever in this case.